Reabe, J.
 

 The defendants’ counsel asked the court to charge the jury “that they must be satisfied beyond a reasonable doubt,” &c. His Honor declined to give the instructions. It is not stated whether he refused because he did not think the instructions proper in themselves, or because he had already substantially given them.
 

 Whether the doctrine of
 
 reasonable doubt,
 
 as it is commonly called, applies to misdemeanors,, or only to capital cases
 
 in favorem vitae,
 
 seems not to be settled in this State. There are
 
 dicta
 
 on both sides of the question; and as an additional
 
 dictum
 
 would but add to the uncertainty, we prefer to leave the question as it is until it'shall be directly presented for decision.
 

 In this case we think his Honor did, substantially, give the instructions asked for; and having given them substantially, he was not obliged to repeat them specifically.
 

 His Honor had charged the jury that “ they must be satisfied, fully satisfied,” &c. “ Fully satisfied” is at least as favorable for the defendant as “ satisfied beyond a rtasona
 
 *148
 
 ble doubt.” For the latter implies that there may be a conviction, although there be ever so many doubts other than reasonable. But
 
 fully satisfied
 
 is to the exclusion of all doubts, reasonable or other. It is said that it is difficult for the jury to understand what “fully satisfied ” means. It is at least as difficult for them to understand what “reasonable doubt ” means. The error consists in supposing that any particular formula of words is necessary, or that any have been prescribed.
 

 It is a great first principle, founded in justice as well as in humanity, that the innocent shall in no case be punished. It follows that before any one can be punished there must be a certainty of his guilt.
 

 Inasmuch, then, as a doubt required an acquittal, it was necessary to define doubt, and especially to define the kind of doubt which should operate as as acquittal; for doubts are of as many grades as there are grades from an atom to a mountain, and of as many degrees as there are degrees from a shadow to the substance. They are “slight,” “trivial,” “fanciful,” on the one side; “reasonable,” “substantial,” “ grave,” on the other. Must a doubt like an atom or a shadow acquit ? Or if the doubts were graded by numbers from
 
 one,
 
 the smallest, to a
 
 thousand,
 
 the largest, would the smallest acquit ? or if not, what number in the ascending scale would ?
 

 Hitherto the mind has not been sufficiently subtle, nor language sufficiently precise, to lay down any inflexible rule or specific formula of words. That it must be a reasonable doubt is usually accepted as a sufficient, but not the only, definition. “ Fully satisfied” is just as good a definition of that state of mind in which it is safe to convict. Whenever it appears that the Judge has been careful to impress upon the jury the great principle, that the innocent must in no case be convicted, we must hold that to be suffi
 
 *149
 
 cient, without regard to the particular form of language which may be used.
 

 In regard to the title to the property on which the malicious mischief was perpetrated, his Honor charged the jury that they must be “ satisfied,” &c. And it is objected that this was as much as to say that they need not be
 
 fully
 
 satisfied upon that part of the case. We rather think that after he had explained that by satisfied he meant fully satisfied, the explanation followed the word without being repeated. But whether that be so or not was not material, because as to the ownership of the property it was sufficient that they should be
 
 satisfied.
 

 The indictment in this case was found at Fall Term, 1863, and it is insisted by the defendants that at that time there were no
 
 courts
 
 in North Carolina; that the tribunals claiming to be such were usurpations. It may be admitted, for the sake of the argument, that there were no courts in the rightful government, but there was an organized
 
 de facto
 
 government, with the same system of courts which we have now, and the indictment was regularly found by a grand jury in the proper court under that government. Subsequently that
 
 de facto
 
 government gave way to the present rightful government; and the paramount law of the public good may well be supposed to have transferred the proceedings in those courts to the succeeding courts in this government.
 

 But the validity of the indictment does not depend upon that view of the case, because the ordinance of the Convention of 1865 expressly recognized and validated the proceedings of the courts of the
 
 de facto
 
 government as' follows: •
 

 “All the judicial proceedings had, or which may be had, in the courts of record, and before justices of the peace, shall be deemed and held valid, in like manner, and to the same extent, and not otherwise, as if the State had not on
 
 *150
 
 the said day, or since, attempted to secede from the United States.”
 

 To the application of this ordinance the defendant objects, that an indictment is not a judicial proceeding.
 

 We think that it is literally and technically a judicial proceeding, and certainly it is within the fair construction of the ordinance; for it could not have been the purpose to validate trials, convictions and punishments, and not the indictments upon which they were founded.
 

 It is further objected that if the ordinance embraces indictments, then the ordinance is itself invalid, as exceeding the powers of the Convention.
 

 The defendant’s counsel favored us with an able argument upon the powers of the Convention, the authority by which it was called, the President of the United States, the extent of the President’s powers, the limitations in the proclamations of the President and the Provisional Governor, &c., &c., embracing the general proposition that the Convention was limited to the duty of setting in operation the State government.
 

 Conceding the proposition, for the sake of the argument, it would not follow that the validating the pending prosecutions for crimes was not a part of that duty. It would seem that the safety of society required that criminals should not be turned loose in the very infancy and weakness of the reorganized State.
 

 But, without pursuing the argument, we do not admit that the powers of the Convention we,re limited, except by the Constitution of the United States.
 

 Supposing that to be so, then it is insisted that the ordinance is an
 
 ex post facto
 
 law, which is forbidden by the Constitution of the United States.
 

 An
 
 ex post facto
 
 law is the making an act criminal which was not so at the time of its commission. Certainly the ordinance has no such effect as that. It only provides the
 
 *151
 
 means by which a criminal may be brought to answer for that which was a crime when committed.
 

 We have not overlooked the fact that the proper time for the defendant to have made these objections was before the trial. If there had been more force in them than we have been able to perceive, they would not be favorably entertained after the defendant has taken the chances of a trial without objection.
 

 There is no error.
 

 This opinion will be certified to the court below that there may be judgment and execution.
 

 Per Curiam. There is no error.