## STATE v. J. L. GRAHAM.

*Indictment for Arson—Lessee—Evidence, Admissibility of— Evidence of Collateral Facts.*

1. An indictment charging the defendant with burning a dwelling house occupied by him "as lessee" falls within Section 1061 of *The Code* which declares that any tenant who shall injure any tenant house of his landlord by burning, or in any other manner, shall be guilty of a misdemeanor.
2. It is only when the transactions are so connected or contemporaneous as to form a continuing action that evidence of a collateral offence will be heard to prove the intent of the offence charged; hence,
3. In the trial of an indictment for burning a dwelling house occupied by the defendant as lessee, evidence that the defendant at a prior time was guilty of a similar offence is inadmissible.

INDICTMENT for arson, tried before *Greene, J.,* and a jury at July Term, 1897, of CATAWBA Superior Court. The indictment was as follows :

" The State of North Carolina, Catawba County, Superior Court, Spring Term, 1897. The jurors for the State, upon their oath, present: That James L. Graham, late of the county of Catawba, on the 5th day of March, in the year of our Lord one thousand eight hundred and ninety-six, with force and arms, at and in the county aforesaid, unlawfully, wantonly, wilfully, maliciously and feloniously did set fire to and burn a dwelling house in the town of Newton, the property of A. J. Seagle and others, trustees of the Presbyterian Church, and their successors in office for Concord Presbytery, the said dwelling being known as the Manse of the Presbyterian Church in the town of Newton, North Carolina, and at the time of the said fire used as a dwelling by James L. Graham, as lessee, against the form of the Statute in such cases made and provided and against the peace and the dignity of the State.

" And the jurors for the State, upon their oaths aforesaid,

do further present: That James L. Graham, of Catawba County, on the 5th of March, 1896, with force and arms, at and in said county, unlawfully, wantonly, wilfully, maliciously and feloniously a certain dwelling house situated in Catawba County, known as the Presbyterian Manse or Parsonage, in the town of Newton, the property of said Presbyterian Church, the legal title of which had been made to A. J. Seagle and others and their successors in office, and then and there used by said Graham as lessee, did, in the manner and form as aforesaid, did set fire to, burn and consume, against the form of the Statute in such cases made and provided, and against the peace and dignity of the State."

The State offered evidence tending to show that the Presbyterian Manse in Newton was burned on the 5th of March, 1896, about dark, and that the defendant had leased said house from the trustees of the Presbyterian Church in the summer of 1895, and at the time of the fire was still the tenant of the said trustees.

The State offered further evidence tending to show that the defendant had taken out policies of insurance on his furniture in the Manse for $700, and that the house was on fire on the 5th of March, 1896, about dark, soon after Graham and his family had locked and left the house to take a train for China Grove; that the property in the house was worth much less than the insurance on the property; that on the 8th day of May, 1895, while Graham had a cottage rented from Mrs. Fry, he secured a policy of insurance on his effects in the house for $800, representing them to the insurance company to be worth $1,100, and on the 20th of May, twelve days thereafter, house and contents were burned shortly after Graham and his family had left the house to attend the exercises at school in Newton.

State offered evidence of the above tending to show the

similarity of the offences.   Defendant objected to the testimony relating to the first fire.   State insisted that circumstances as to the first fire were competent because the offences were similar.   (Objection by defendant overruled, and defendant excepted.)

State also offered one Gaither, who testified that he had had a conversation with defendant about the fires, and witness asked him why he carried so much insurance, and defendant replied, "always insure for enough and you will get pay for what you lose;" and defendant told witness, also, in speaking of Mutual Benefit Society for sick benefits, that he wanted the largest he could get; that he did not want to go into it unless he could make something out of it.   Defendant objected.   (Objection overruled, and he excepted.)

As tending to show similarity of occurrences and the defendant's fraudulent intent, the State offered testimony that in May, 1896, soon after the second fire, the defendant took $10,000 accident insurance, paying a weekly benefit of $50 per week, unless injured by steam, and then $100 per week, and on the third day after getting this insurance he told the agent that he had shot his big toe, and claimed the insurance.   Defendant objected to the above.   (Objection overruled, and he excepted.)

There was a verdict of guilty and defendant moved in arrest of judgment, because there was no offence charged in the bill either under the Statutes or at common law.

The State's contention was that, if the offence charged is not punishable under Section 985 of *The Code*, it is punishable under 1761 of *The Code*.   The Court held that the bill was good under Section 1761 of *The Code*.   The defendant excepted to the ruling of the Court refusing to arrest judgment.   Thereupon the Court rendered judgment that the defendant pay a fine of $300 and the costs.   From this judgment the defendant appealed.

121—79

*Mr. Zeb V. Walser, Attorney General,* for the State.

*Messrs. MacRae & Day* and *Argo & Snow,* for defendant (appellant).

FAIRCLOTH, C. J. The defendant was indicted for burning a dwelling house, tne property of A. J. Seagle and others, trustees of the Presbyterian Church, used at the time of the burning as a dwelling by the defendant "as lessee." There were two counts in the indictment, each concluding against the form of the Statute in such cases made and provided and against the peace and dignity of the State.

The State introduced evidence to show that the dwelling was burned on the 5th of March, 1896, and that it was at that time the dwelling of the defendant and used by him as lessee of the owners.

The State also offered evidence tending to show that on May the 8th, 1895, the defendant occupied a rented cottage, the property of Mrs. Fry, and that after defendant had insured his effects, said cottage and contents were burned on May 20th, 1895. This evidence was admitted to show the similarity of the offences and defendant excepted.

After verdict of guilty the defendant moved in arrest of judgment, because there was no offence charged in the bill either at common law or under our Statutes. On the motion in arrest of judgment we were favored with an argument against the sufficiency of the bill as a common law offence, charging the defendant with arson. We will not stop to pass upon that question as the case falls easily within *The Code,* 1761, which declares that any tenant, who shall injure any tenement-house, &c., of his landlord, by burning or in any other manner, shall be guilty of a misdemeanor and fined or imprisoned at the discretion of the Court. Indeed, it is manifest to us that the bill, whether so intended or not, by its express terms is embraced by the

STATE *v.* GRAHAM.

language of the Statute. The indictment charges the defendant "as lessee," (*i. e.*, as tenant) of the landlord, and the trial, conviction and sentence, fortunately for the defendant, were had upon that view of the offence. The offence could not have been included under any of the sub-sections of *The Code*, 985.

We think that the exception to the admission of evidence tending to show the burning of the cottage on May 20, 1895, was well taken. Evidence of a distinct, substantive offence cannot be admitted in support of another offence, as a general rule. *State* v. *Shuford*, 69 N. C., 486; *State* v. *Alston*, 94 N. C., 930. If A steals a horse on January 1, and is indicted for stealing another horse on July 1, proof of the first taking is not competent on trial for the second stealing, as that would be proving a collateral offence. The State could not introduce such evidence on the question of defendant's character, unless he has put his character in issue.

To this general rule there is an exception, that is, when the evidence tends to prove *guilty knowledge* of the defendant, when that is an essential element of the crime, that is, the *quo animo*, the *intent* or design. Illustrations,—passing counterfeit money of like kind; sending a threatening letter, when prior and subsequent letters to the same person are competent in order to show the intent and meaning of the particular letter in question. In these and other instances, the evidence is admissible to prove the *scienter* only, and it must be excluded when it does not fall legitimately within the scope of the exceptions. *Rex* v. *Boucher*, 4 C. & P. 562; *Thorp* v. *State*, 15 Ala., 479; Wharton's Cr. Law, Section 650; *State* v. *Murphy*, 84 N. C., 742.

It is when the transactions are so connected or contemporaneous as to form a continuing action that evidence of the collateral offence will be heard to prove the *intent* of the offence charged. *State* v. *Jeffries*, 117 N. C., 727.

The defendant being charged with firing an outhouse, the State was permitted to prove that at the *same time* he made an attempt to fire a dwelling near it, the evidence directly connecting the defendant with the latter attempt. *State* v. *Thompson,* 97 N. C., 496.

There was error in admitting the evidence to which defendant excepted. No other exception need be considered.

New trial.