The defendant was indicted for keeping liquor for sale in the county of Richmond, contrary to chap. 21 of the Laws of 1908. One of the questions in the case is whether there was any evidence against the defendant of a violation of the statute.
George Smith, a witness for the State, testified: I am a tinner by trade and have a shop in the town of Hamlet, Richmond County. On 17 February, 1908, I let C. D. Dobbins have the key to my tin shop, between 7 and 7:30 a. m. I returned to my shop about 10 a. m., (466) on the same day, in company with one Charles Niven, and found C. D. Dobbins in my shop when we got there. There was no one else in the shop at that time. In a few minutes Dobbins went out, and a very short time thereafter, Mr. Hubbard, the policeman, came into my shop with papers to search it, and found a barrel full of point and half-pint bottles filled with corn whiskey. There was no whiskey in my shop when I let C. D. Dobbins have the key at 7:30 that morning. The barrel of whiskey was put in my shop between the hour that I let *Page 341 
Dobbins have the key and 10 a. m., when I returned. The officer took possession of the whiskey and arrested Dobbins. I never put the whiskey in there, and don't know who did.
I don't recall by whom I sent the key of my shop to Dobbins. He came to me and said that Dobbins wanted my shop key, and I handed it to him. I don't know whether he gave the key to Dobbins or not, but do know that I found Dobbins in possession of my shop when I reached there at 10 o'clock, about three hours later. There was no one in the shop except Dobbins.
J. A. Spencer, a witness for the state, testified: At the request of Chief of Police R.L. Hubbard, I watched the shop of George W. Smith and saw the defendant Dobbins in the shop; no one else was in there except him; soon after I was stationed to watch the shop, I saw Dobbins come out of the shop, lock the door, and go over to a negro pool room. In five or ten minutes I saw the defendant come back to the shop, unlock the door and go in. The defendant had been in the shop a very short time when I saw G. W. Smith, the owner of the shop, and one Charles Niven go in the shop. A few minutes after Smith and Niven went into the shop, I saw the defendant, Dobbins, leave the shop a second time and go to the negro pool room. At this time, Chief of Police Hubbard came to me with papers to search the shop for liquor. We proceeded to the shop, and in the back end of the shop found a barrel full of pint and half-pint bottles of corn liquor. It (467) had been opened, and appeared as if some of its contents had been taken out. Smith, the owner of the shop, told me that he had sent his key to C. D. Dobbins early that morning, and he had not returned to the shop, after sending his key to Dobbins, until a few minutes before I came in; that when he returned to the shop he found Dobbins in the shop, but knew nothing of the liquor being in the shop until we found it. The general character of G. W. Smith is good.
R.L. Hubbard, a witness for the State, testified: I was chief of police in the town of Hamlet on 17 February, 1908, and in consequence of information received by me, I got J. A. Spencer to watch the movements of the defendant, also the tin shop of G. W. Smith. I saw the defendant open the door and go into the shop and later come out, lock the door, and go over towards a negro pool room; and saw him return, open the shop, go in and come out the second time, and go towards the pool room; at which time, in consequence of these movements and the further information I had received, I had a warrant issued, under the statute, to search the shop for liquor kept for sale contrary to law: I left Spencer to watch the shop while I went before the mayor and got the warrant to search the premises; when I returned I saw the defendant in the shop. No one else was in the shop except the defendant. I *Page 342 
saw him go to the window and look out apparently for the purpose of seeing whether any one was watching his movements; then he came out and went towards the pool room; G. W. Smith, the owner of the shop, and Charles Niven came to the shop a few minutes before the defendant left the last time, and a few minutes after he had left, I and Spencer, under the warrant I had received for searching the shop, went to the shop, searched the same, and found a barrel of whiskey containing pint and half-pint bottles. The defendant had only been gone a few minutes when this search was made and the liquor was found. G. W. (468) Smith told me that he knew nothing about the whiskey being in the shop, and that he sent his key to the defendant that morning about 7 o'clock, and found the defendant in his shop when he got there; that the liquor did not belong to him, and that he knew nothing at all about it. The general character of the witness G. W. Smith is good.
The defendant offered no testimony, but requested the court to instruct the jury:
1. That there is not sufficient evidence to warrant the jury in convicting the defendant, and the jury will return a verdict of not guilty.
2. If the evidence does not remove every reasonable view of the case except the guilt of the defendant, the jury will return a verdict of not guilty.
The court refused to give the instruction, and the defendant duly excepted. Judgment was entered upon the verdict of guilty, and the defendant appealed.
After stating the case: If we treat the first prayer for instructions as a request to charge the jury that there was no evidence of the defendant's guilt, we think it was properly refused. The evidence was circumstantial, it is true, but it strongly pointed to the guilt of the defendant. If the jury found the facts to be in accordance with the testimony, they could hardly escape the conclusion that the defendant had placed the liquor in the shop of the witness, George Smith. But whether the testimony against the defendant was strong or weak, it should have been submitted to the jury, if it was not merely conjectural, but reasonably tended to establish his guilt. Byrd v. Express Co.,139 N.C. 273. Why it did not have this tendency, we are unable to see. The liquor was not in the shop when the key was given to the (469) defendant, and shortly thereafter Smith returned to the shop and found the defendant there, and immediately afterwards the policeman came and found a barrel of pint and half pint bottles filled *Page 343 
with corn whiskey. There were other circumstances which tended to show the defendant's guilt, as will appear from a perusal of the evidence.
It was not necessary that the court should have given the second prayer for instructions in the very words in which it is expressed. The law does not require that any particular formula shall be used in charging upon the doctrine of reasonable doubt. S. v. Adams, 138 N.C. 688. The court charged the jury that, in order to convict the defendant, they must find from the evidence beyond a reasonable doubt, that the barrel filled with bottles of whiskey was in the defendant's possession, that he was keeping it for sale and that there was more than one quart, and that, if they were not so satisfied, the defendant should be acquitted. There was no error in this instruction, and it was sufficiently responsive to the defendant's second prayer.
No error.
Cited: S. v. Pitt, 166 N.C. 272.
(470)