## STATE v. ALEX HARRIS.

### (Filed 15 December, 1943.)

**1. Criminal Law § 52a—**

It is only in cases of necessity in attaining the ends of justice that a mistrial may be ordered in a capital case without the consent of the accused.

**2. Criminal Law § 47—**

A motion to consolidate, C. S., 4622, three capital cases *in medias res* pending the taking of testimony on the trial of one of them, is not an assent to a mistrial in order to effect a consolidation.

**3. Same—**

Order of consolidation in capital cases, C. S., 4622, will be made when seasonably brought to the court's attention, and not at a time when the validity of the whole trial might be threatened by the consolidation.

**4. Criminal Law § 29b—**

Where homicides are so connected in time and place as to be all parts of one continuous transaction or the same *res gestæ*, evidence of all of such crimes are competent upon the trial of any one of them.

**5. Same—**

The general rule is that evidence of a distinct, substantive offense is inadmissible to prove another and independent crime; but to this there is the exception that proof of the commission of other like offenses is competent to show the *quo animo*, intent, design, *scienter*, or to make out the *res gestæ*, or to exhibit a chain of circumstantial evidence in respect to the matter on trial, when such crimes are so connected with the offense charged as to throw light on one or more of these questions.

**6. Criminal Law § 53a—**

The court's charge to the jury must be considered in its entirety and contextually.

**7. Criminal Law § 28a—**

The accused enters upon a criminal trial with his sanity taken for granted, with the presumption of innocence in his favor, and with the burden on the State to establish his guilt beyond a reasonable doubt; and not until the prosecution has made out a *prima facie* case is it incumbent on him to offer evidence of his defense or take the risk of an adverse verdict.

**8. Criminal Law § 5c—**

When insanity is interposed as a defense in a criminal prosecution, the burden rests with the defendant, who sets it up, to prove such insanity to the satisfaction of the jury; and where the accused offers evidence of his insanity, the State may seek to rebut it, or to establish defendant's sanity by presumption of law, or by the testimony of witnesses, or both.

**9. Criminal Law §§ 5a, 5c—**

The test of criminal responsibility, under a plea of insanity, is the capacity to distinguish between right and wrong at the time and in respect of the matter under investigation.

**10. Criminal Law § 28a—**

With us the doctrine of reasonable doubt is applied in favor of the accused, but never against him. Condemnation or conviction requires proof "beyond a reasonable doubt"; mitigation, excuse, or justification "to the satisfaction of the jury," which alone is the judge of its satisfaction.

APPEAL by defendant from *Carr, J.,* at January Term, 1943, of HOKE.

Criminal prosecution tried upon indictment charging the defendant with the murder of Mrs. E. A. Bill.

The record discloses that on Thursday, 27 August, 1942, the defendant entered Bill's Service Station in Hoke County, which is about 2½ miles from Raeford on the Fayetteville Highway, and shot three members of the Bill family, one after the other, in rapid succession, and killed them all. Those killed were Mrs. E. A. Bill, her son, Eugene Bill, and her married daughter, Mrs. Estelle Wilson.

Three separate indictments were returned against the defendant charging him with the several homicides. He was tried on the bill charging him with the murder of Mrs. E. A. Bill.

The defendant's plea was insanity or mental irresponsibility bottomed on the fact that his son, Johnny Harris, had been shot and killed by Eugene Bill at this same service station on the preceding Sunday, 23 August, which had caused the defendant great stress of mind, total loss of sleep, and in the meantime he had taken a number of B-C headache powders, all of which had dethroned his reason and rendered him incapable of knowing what he was doing.

During the examination of the State's first witness, who was describing the scene in the service station as he found it after the shooting, reference was made to the position of the body of Eugene Bill; whereupon the defendant moved that the three indictments be consolidated and tried together. Overruled; exception.

Following this determination, the court at first ruled that the State would not be permitted to show any homicide except the one for which the defendant was then on trial. Later, when it appeared that confessions or statements made by the defendant referred to all the homicides, the court permitted evidence of the other homicides as showing guilty knowledge on the part of the defendant. Exception.

The theory of the prosecution is, that the defendant wiped out the Bill family as a matter of revenge. He told Crawford Wright at Fairmont on the day before the homicides that Mrs. E. A. Bill ought to be

in jail along with her son Eugene for killing his boy; that he had heard she was the one really responsible for his boy's death. Eugene Bill was then out on bail, awaiting trial on a charge of killing Johnny Harris.

According to statements made by the defendant after the shooting, he went into the service station and said to Mrs. Bill, "I understand you had some trouble out here last Sunday." Mrs. Bill replied, "I don't care to discuss that now." About that time Eugene Bill came into the service station and went to the cash register to make some change. The defendant spoke to him and said, "I understand you shot a Harris boy out here Sunday." Eugene replied, "Well, he asked for it and I gave it to him." The defendant then said, "Yes, you asked for it and now I am going to give it to you." Whereupon the defendant shot Eugene and he fell. Mrs. Bill started around the end of the counter and he shot her one time and when she was falling he shot her again. About that time Mrs. Wilson came into the station from a back door and he shot her and she fell. It all happened within a space of a few minutes. The defendant told the sheriff that he had six bullets in his pistol and that he shot everything in sight. Continuing, the sheriff testified: "He said he reckoned he would be electrocuted for it, and he was sorry he had done it. He said the Bill boy had taken the law in his hand and he took the law in his hands, and he guessed they had all gone wrong about it." On the way to jail, he said "I am not drunk and I am not crazy. I didn't do that to try to be a hero or an outlaw, but I did it for love and blood."

Shortly after the homicides, Dr. Matheson examined the bodies and found that Mrs. Bill had been shot three times; Mrs. Wilson twice, and Eugene Bill once. Death was practically instantaneous in each instance.

After the shooting, the defendant saw Philmore Carpenter, who was working on the highway. He called him and said, "I want you to take my gun and give it to one of my boys."

Verdict: Guilty of murder in the first degree.

Judgment: Death by asphyxiation.

The defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*N. McNair Smith, E. L. Gavin, and Varser, McIntyre & Henry for defendant.*

STACY, C. J. We have here for determination, (1) the correctness of the refusal to consolidate the three indictments, (2) the competency of evidence of other crimes to show guilty knowledge, and (3) the adequacy or sufficiency of the charge.

First, in respect of the defendant's motion to consolidate the three indictments for trial, it is to be observed that this came during the progress of the hearing. Had the motion been made *in limine,* a different situation might have arisen, as the court observed at the time. C. S., 4622. However, after the jury had been impaneled and the prosecution had begun to offer its evidence, the court regarded the motion as too late and remarked that it could only be granted by ordering a mistrial and selecting another jury to try the three consolidated cases. The jury had been impaneled to try the issue between the State and the accused on the indictment charging the defendant with the murder of Mrs. E. A. Bill, and none other. No motion for a mistrial was lodged by the defendant.

The manner of selecting a jury in a capital case is quite different from that followed in other cases, and the considerations usually surrounding such a jury are also different. *S. v. Ellis,* 200 N. C., 77, 156 S. E., 157; *S. v. Beal,* 199 N. C., 278, 154 S. E., 604. It is only in cases of necessity in attaining the ends of justice that a mistrial may be ordered in a capital case without the consent of the accused. *S. v. Tyson,* 138 N. C., 627, 50 S. E., 456; *S. v. Cain,* 175 N. C., 825, 95 S. E., 930. Here the accused did not assent to a mistrial in order to effect a consolidation. His motion was to consolidate *in medias res* pending the taking of testimony in the instant case. *S. v. Rice,* 202 N. C., 411, 163 S. E., 112. The trial court was of opinion that the jury, as then selected and impaneled, would not be authorized to try the defendant on the other indictments. For this reason and in its discretion the motion to consolidate was denied. We cannot say there was error in the ruling.

True it is provided by C. S., 4622, that where there are several charges against any person for the same act or for two or more transactions connected together, or for two or more transactions of the same class of offenses, which may be properly joined, the court will order them to be consolidated. *S. v. Combs,* 200 N. C., 671, 158 S. E., 252; *S. v. Malpass,* 189 N. C., 349, 127 S. E., 248; *S. v. Lewis,* 185 N. C., 640, 116 S. E., 259. This means, however, that the order of consolidation will be made in such cases when seasonably brought to the court's attention, and not at a time when the validity of the whole trial might seriously be threatened by the consolidation. *S. v. Rice, supra.* It is rare that we find a consolidation of capital indictments, though there are some, usually by consent, the most recent one being in the case of *S. v. Grass, ante,* 31.

No harm has come to the defendant from the court's ruling on the consolidation of the indictments and apparently no benefit would be derived from a new trial on this account.

Second, as to the competency of the evidence of the other crimes to show *scienter* or guilty knowledge, it may be noted they are all parts of

one continuous transaction or the same *res gestæ*. The defendant must have realized this when he interposed a motion to consolidate the three indictments. The homicides were so connected in time and place as to make the evidence of all competent upon the trial of any one. *S. v. Adams,* 138 N. C., 688, 50 S. E., 765; *S. v. Davis,* 177 N. C., 573, 98 S. E., 785. Indeed, as bearing upon the elements of premeditation and deliberation it was proper to show, and for the jury to consider, the conduct of the defendant, before and after, as well as at the time of, the homicide, and all attendant circumstances. *S. v. Evans,* 198 N. C., 82, 150 S. E., 678; *S. v. Bowser,* 214 N. C., 249, 199 S. E., 31; *S. v. Watson,* 222 N. C., 672, 24 S. E. (2d), 540.

The general rule undoubtedly is, as contended by the defendant, that evidence of a distinct, substantive offense is inadmissible to prove another and independent crime, the two being wholly disconnected and in no way related to each other. *S. v. Adams, supra; S. v. McCall,* 131 N. C., 798, 42 S. E., 894; *S. v. Graham,* 121 N. C., 623, 28 S. E., 409. But to this, there is the exception as well established as the rule itself, that proof of the commission of other like offenses is competent to show the *quo animo,* intent, design, guilty knowledge or *scienter,* or to make out the *res gestæ,* or to exhibit a chain of circumstantial evidence in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions. *S. v. Simons,* 178 N. C., 679, 100 S. E., 239; *S. v. Hawkins,* 214 N. C., 326, 199 S. E., 284. The exception to the rule has been fully discussed by *Walker, J.,* in *S. v. Stancill,* 178 N. C., 683, 100 S. E., 241, and in a valuable note to the case of *People v. Moleneux,* 168 N. Y., 264, as reported in 62 L. R. A., 193-357.

Speaking to the subject in *S. v. Beam,* 184 N. C., 730, 115 S. E., 176, it was said: "The rule against admitting proof of extraneous crimes is subject, however, to certain qualifications or exceptions. In making proof against a defendant it is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constitutive elements of the crime of which the defendant is accused in the case on trial, even though such facts and circumstances may tend to prove that the defendant has committed other crimes. So evidence covering the commission of other offenses is admissible when two or more crimes are so linked in point of time or circumstances that one cannot be fully shown without proving the other. . . . Whenever mental state, *scienter,* or *quo animo* constitutes an ingredient of the offense charged, evidence is admissible of acts, conduct, or declarations of the accused which tend to establish such knowledge, intention, or motive notwithstanding the fact that it may disclose a different crime in law."

In the circumstances disclosed by the record, it would seem that there was no error in admitting the evidence of the other homicides. A new trial could not be predicated on assignments of error based on these exceptions.

Third, as bearing on the adequacy or sufficiency of the charge, the rule that what the court says to the jury must be considered in its entirety and contextually would seem to save it from successful attack. *S. v. Smith,* 221 N. C., 400, 20 S. E. (2d), 360.

The principal infirmity in the charge, so the defendant contends, is that the jury was instructed not to consider the defendant's plea of insanity unless and until they first found him guilty beyond a reasonable doubt of one of the grades of an unlawful homicide, as contained in the bill of indictment, and then the burden would be on the defendant to satisfy the jury of his insanity or mental irresponsibility at the time of the killing in order to escape a conviction.

The court was here dealing with the intensity of proof required of the State to obtain a conviction, and with the *quantum* of proof required of the defendant on his plea of insanity. While somewhat out of the ordinary or usual form, the instruction will do. Its meaning is not difficult of discernment. It seems clear that the order in which the matter was considered had no material bearing on the outcome, since the jury was not satisfied of the defendant's insanity, and was convinced beyond a reasonable doubt of his guilt. *S. v. Hancock,* 151 N. C., 699, 66 S. E., 137.

The defendant entered upon the trial with his sanity taken for granted, with the presumption of innocence in his favor, and with the burden on the State to establish his guilt beyond a reasonable doubt. *S. v. Singleton,* 183 N. C., 738, 110 S. E., 846. Not until the prosecution had made out a *prima facie* case was it incumbent on the defendant to offer evidence of his defense or take the risk of an adverse verdict. *Speas v. Bank,* 188 N. C., 524, 125 S. E., 398; 20 Am. Jur., 159.

The atrocity of the defendant's conduct, as disclosed by the State's evidence, was a circumstance from which opposite conclusions were sought to be drawn; the one that it exhibited a mind fatally bent on mischief; the other that it revealed a diseased mind. The jury seems to have attributed it to the former.

Of course, at the threshold of the case and throughout the hearing, the burden was on the State to establish the guilt of the accused beyond a reasonable doubt. *S. v. DeGraffenreid, ante,* 461; *S. v. Schoolfield,* 184 N. C., 721, 114 S. E., 466. But this did not initially require affirmative proof of the sanity of the accused, which is presumed as his normal condition, and upon which the State is entitled to rely. *S. v. Lewis,* 20 Nev., 333. Soundness of mind is the natural and normal condition of

men, and therefore everyone is presumed to be sane until the contrary is made to appear. *S. v. Clark,* 34 Wash., 485, 76 Pac., 98, 101 Am. St. Rep., 1006.

In this jurisdiction, as well as in many others, when insanity is interposed as a defense in a criminal prosecution, the burden rests with the defendant, who sets it up, to prove such insanity, not beyond a reasonable doubt, but to the satisfaction of the jury. *S. v. Cureton,* 218 N. C., 491, 11 S. E. (2d), 469; *S. v. Stafford,* 203 N. C., 601, 166 S. E., 734; *S. v. Jones, ibid.,* 374, 166 S. E., 163; *S. v. Wilson,* 197 N. C., 547, 149 S. E., 845; *S. v. Walker,* 193 N. C., 489, 137 S. E., 429; *S. v. Jones,* 191 N. C., 753, 133 S. E., 81; *S. v. Terry,* 173 N. C., 761, 92 S. E., 154.

It is quite correct to say the burden is on the State to prove beyond a reasonable doubt every essential element of the crime charged, including the necessary intent. *S. v. Newsome,* 195 N. C., 552, 143 S. E., 187; *S. v. Crook,* 189 N. C., 545, 127 S. E., 579. In undertaking this burden, however, the prosecution may assume, as the law does, that the defendant is sane. The assumption persists until challenged and the contrary is made to appear from circumstances of alleviation, excuse or justification; and it is incumbent on the defendant to show such circumstances to the satisfaction of the jury, unless they arise out of the evidence against him. *S. v. Grainger, post,* 716. If no evidence of insanity be offered, the presumption of sanity prevails. And where the defendant offers evidence of his insanity, the State may seek to rebut it or to establish the defendant's sanity by the presumption of law, or by the testimony of witnesses, or by both.

With us the doctrine of reasonable doubt is applied in favor of the accused, but never against him. *S. v. Payne,* 86 N. C., 609; *S. v. Ellick,* 60 N. C., 450. Condemnation or conviction requires proof "beyond a reasonable doubt"; mitigation, excuse or justification "to the satisfaction of the jury." *S. v. Benson,* 183 N. C., 795, 111 S. E., 809; *S. v. Brittain,* 89 N. C., 481; *S. v. Willis,* 63 N. C., 26; *S. v. Ellick, supra.* "Beyond a reasonable doubt" means "fully satisfied" (*S. v. Sears,* 61 N. C., 146), "entirely convinced" (*S. v. Parker,* 61 N. C., 473), "satisfied to a moral certainty" (*S. v. Wilcox,* 132 N. C., 1120, 44 S. E., 625). See *S. v. Charles,* 161 N. C., 286, 76 S. E., 715; *S. v. Schoolfield,* 184 N. C., 721, 114 S. E., 466; *S. v. Dixon,* 149 N. C., 460, 62 S. E., 615; *S. v. Whitson,* 111 N. C., 695, 16 S. E., 332; *S. v. Steele,* 190 N. C., 506, 130 S. E., 308. "To the satisfaction of the jury" means such as satisfies the jury of the truth of the matter. *S. v. Brittain, supra; S. v. Ellick, supra.* "The greater weight of the evidence" may or may not satisfy the jury. *S. v. Prince, ante,* 392. The jury alone is the judge of its satisfaction. See *Williams v. Bldg. & Loan Asso.,* 207 N. C., 362, 177 S. E., 176. One who would shelter himself under a plea of insanity must satisfy the jury

of his inability to distinguish between right and wrong at the time of and in relation to the alleged criminal act. *S. v. Haywood,* 61 N. C., 376; *S. v. Sewell,* 48 N. C., 245.

The test of responsibility is the capacity to distinguish between right and wrong at the time and in respect of the matter under investigation. *S. v. Potts,* 100 N. C., 457, 6 S. E., 657; *S. v. Brandon,* 53 N. C., 463. He who knows the right and still the wrong pursues is amenable to the criminal law. *S. v. Jenkins,* 208 N. C., 740, 182 S. E., 324. On the other hand, if "the accused should be in such a state of mental disease as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong," the law does not hold him accountable for his acts, for guilt arises from volition, and not from a diseased mind. *S. v. Brandon, supra; S. v. Haywood, supra; Knights v. State,* 58 Neb., 225, 76 Am. St. Rep., 78, and note.

On the whole, the case seems to have been tried in substantial conformity to the decisions on the subject. No reversible error has been made to appear. The verdict and judgment will be upheld.

No error.