BILLY THOMAS GIBBS

*v.*

STATE OF TENNESSEE

(*Nashville,* December Term, 1956)

Opinion filed April 1, 1957.

GEORGE M. BEAVER and WILLIAM M. DAVIS, McMinn-ville, for plaintiff in error.

NAT TIPTON, Advocate General, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

Gibbs was indicted, tried and convicted for the murder of Mrs. Vassey Bratcher and as a penalty was sentenced to electrocution.

This homicide occurred in the early part of March, 1955. The deceased lived with her husband in Warren County about 8 miles from McMinnville. Living with this couple was their daughter about 12 or 13 years of age and the 2 year old granddaughter. The plaintiff in error is a young man who lived a very short distance from the Bratchers.

A few days after this homicide the son of the deceased went to his parents home to see them and to visit his little 2 year old child. This son lived in the town of McMinnville. His first wife had died when the little girl who lived with the grandparents was about 4 months old and they apparently had kept her since. When the boy reached the home of his parents he found a note pinned on the door to the house that the family had gone to take the baby to a hospital. He immediately undertook to find

out where the baby was but could find no trace of her or his family. In the meantime, some officers of Warren County had seen the plaintiff in error in possession of a truck which belonged to Mr. Bratcher and they then, when his son was hunting for them, advised him of this fact. In hunting for his parents it was also learned that the plaintiff in error had sold certain personal property, meat, sow and pigs, etc., which belonged to the husband of the deceased Mrs. Bratcher. As a result of finding this a warrant was taken out for the plaintiff in error for the theft and he was put in the county jail of Warren County.

The next day the Sheriff and a number of his deputies searched the Bratcher premises. In a cistern near the barn they found the body of this 2 year old girl floating, and at a sink hole on the premises they found the body of Mrs. Bratcher and the 12 or 13 year old daughter. They also found the body of Mr. Bratcher but it is not very clear as to where his body was located.

Upon finding these things the Sheriff immediately went and transferred the plaintiff in error from the Warren County jail to the jail at Tullahoma.

Upon finding these facts and bodies this was reported to the District Attorney General and he in company with the members of the T.B.I. force questioned the plaintiff in error with reference to these homicides and he made a statement to them in the presence of his father.

The substance of this statement is that the husband of the deceased and plaintiff in error got into an argument, the husband shoved the plaintiff over a stump and then ran and as he ran the plaintiff in error shot him with his rifle. His confession is to the effect that he did

not intend to kill Mr. Bratcher but meant to shoot him in the leg but instead of this he shot higher. When he reached the body after the shooting he saw that Mr. Bratcher was going to die and then he turned around and shot him several times in the head and the neck. The statement further recites that probably as a result of these shots and very shortly thereafter the mother, Mrs. Bratcher, came out of the house carrying this baby. When the plaintiff in error saw this he said that he made her throw the baby into the cistern and then as she was running he shot her and then hit her in the head and she fell there in the hallway of the barn. Then he dragged her up into a gear room and left her there. The plaintiff in error then says that he drove off to town in Mr. Bratcher's truck and sold some meat after he had searched the Bratcher's house and tried to find money and could not find any. Upon his return the school bus, coming home from school, got there about that time and the 13 year old daughter got off of this bus and came up to the house. Very shortly thereafter she found the body of her mother and began to cry and scream. Then it was that the plaintiff in error says that he hit the girl on the head with something and hit her again and killed her. He says then that he went off to town again and came back early next morning about 4:30 and took the mother and daughter down to the sink hole and pushed them in and covered them up with brush and buried the father.

Other testimony was introduced, in addition to this confession or statement given to the T.B.I., on behalf of the State showing that the plaintiff in error with a rifle had been seen going in the direction of the premises where the bodies were found, also to the effect that he sold certain property belonging to this family after the

homicide. There was also introduced a confession of the plaintiff in error written in his own hand writing in which he attributes the reason for his acts herein to liquor. The plaintiff in error introduced no evidence in his behalf.

One minor insistence made on this appeal is that the plaintiff in error committed these acts due to his intoxication. We feel though that deliberate intoxication, if such was the case, is not an excuse for an act of the kind here committed. Even thought it was not intended when he took the liquor to kill these people yet under this record, if there was intoxication (the only thing in the record being in the confession of the plaintiff in error to that effect) this intoxication was voluntarily and deliberately assumed. At the same time the plaintiff in error went out with a loaded rifle and we feel that this being true that even though the killing of these people was not intended this would amount to murder anyhow. See *Rogers v. State,* 196 Tenn. 263, 265 S.W.2d 559, and authorities there cited. Be this as it may the facts were before the jury and plaintiff in error did not see fit to take the stand or to offer any other evidence as to his condition in an effort to mitigate this crime if he could have done so. Under the evidence before the jury they were clearly justified in the conclusions reached.

The main and practically the only insistence made here, which was made throughout the trial below, is that the trial court erred in admitting evidence or so much of the plaintiff in error's confession as narrated or told of his prior killing of the husband and father and then of the subsequent killing of the 13 year old daughter.

■ To our minds the evidence of the homicide of Mr. Bratcher was a necessary element in the proof by the State for the homicide of Mrs. Bratcher, because this record clearly shows that the killing of Mrs. Bratcher was done by the plaintiff in error in an attempt to conceal his identity as the slayer of her husband and thus this being true it was clearly permissible to prove that plaintiff in error had previously killed Mr. Bratcher. This Court has said:

"Evidence is also admissible to show the motive prompting the commission of the crime charged by the accused, and is admissible notwithstanding it also shows the commission by the accused of another crime of a similar character. Thus it may be shown that the crime charged was committed for the purpose of concealing another crime, or to prevent the accused from being convicted of another crime."

*Mays v. State,* 145 Tenn. 118, 141, 238 S.W. 1096, 1103.

■ We could repeat the paragraph last above as to the homicide of the daughter. This confession and the evidence here discloses that when the daughter discovered the dead body of her mother she began to cry and run and plaintiff in error then killed her. From these facts the jury might well conclude that the plaintiff in error killed her likewise to avoid the discovery of his crime and his identification as the slayer by her. It is argued by the State that under an exception to the hearsay rule of the doctrine of *res gestae* that the crime here of killing the father and the daughter are admissible and that the evidence of such other crimes which were done as these were is admissible for this reason.

We know that, and must concede that over the years that the courts have frequently used the term *res gestae* when admitting evidence of other crimes or similar evidence before and after a crime. We think though that the author of Wigmore On Evidence, 3rd Edition, Vol. 1, at Sec. 218, correctly analyses the theory and reason for this admission when he says:

"The term 'res gestae' should be once and for all abandoned as useless and confusing. Let it be said that such acts receivable as 'necessary parts of the proof of an entire deed', or 'inseparable elements of the deed', or 'concomitant parts of the criminal act', or anything else that carries its own reasoning and definition with it; but let legal discussion sedulously avoid this much-abused and wholly unmanageable Latin phrase."

Thus we think that this is sound reasoning and that the real reason for admission of these crimes before and after the crime for which the plaintiff in error is here being tried is that they were inseparable components of a completed crime. In other words the crime for which the party was here being charged was committed to cover up a crime that had already been committed. The subsequent crime which was committed was done to cover up this second crime. A long annotation to the section of Wigmore above quoted cites cases from many States in the Union supporting this theory. Among the other cases cited is that of *State v. Harris,* 223 N.C. 697, 28 S.E.2d 232, 236, where the Supreme Court of North Carolina in commenting on a similar state of facts to those involved in the instant case says:

"The homicides were so connected in time and place as to make the evidence of all competent upon the trial of any one. * * *

"The general rule undoubtedly is, as contended by the defendant, that evidence of a distinct, substantive offense is inadmissible to prove another and independent crime, the two being wholly disconnected and in no way related to each other.. *State v. Adams,* supra (138 N.C. 688, 50 S.E. 765); *State v. McCall,* 131 N.C. 798, 42 S.E. 894; *State v. Graham,* 121 N.C. 623, 28 S.E. 409. But to this, there is the exception as well established as the rule itself, that proof of the commission of other like offenses is competent to show the *quo animo,* intent, design, guilty knowledge or scienter, or to make out the *res gestae,* or to exhibit a claim of circumstantial evidence in respect of the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions." Citing authorities.

This is a sound rule and sound reasoning and we hereby adopt as a rule to be applied in this State.

Thus it is that we find no error in this record and the judgment below must be affirmed.

Counsel for the plaintiff in error were appointed by the court to defend this man. They illustrate a cardinal virtue of the Bar of the State, and the Country, that when appointed by a court to do so (to represent the indigent) they, free of charge, wage every possible just and honest defense that they can for one accused of a crime. These young men have done this and we thank them for rendering so ably this service.

The judgment below is affirmed. The execution of the judgment will be carried out according to statute on May 6, 1957.