## STATE v. LINWOOD EARL SUMMERLIN.

(Filed 7 July, 1950.)

**1. Conspiracy § 1—**

A conspiracy is an unlawful combination or agreement of two or more persons to do an unlawful thing or to do a lawful thing in an unlawful manner or by unlawful means.

**2. Conspiracy § 5—Acts and declarations of each conspirator in furtherance of the common design is competent against other conspirators.**

The State's evidence tended to show an agreement to rob, successively, three separate places. *Held:* Evidence of the agreement to rob the place first on their list, and change of plans to first rob one of the other places, the one named in the indictment, which agreement was actually executed, is competent against defendant conspirator even though he was not present when the plans were changed and was not charged in the indictment with any offense in connection with the agreement to rob the place first agreed upon by the conspirators, since all acts or declarations by any of the conspirators in furtherance of the common design is competent against each of the others.

**3. Criminal Law § 29b—**

Evidence of guilt of a crime other than that charged in the indictment is competent when such evidence tends to show *quo animo*, intent, design, guilty knowledge or *scienter*, or to make out the *res gestæ*, or to exhibit a chain of circumstantial evidence in respect to the matter charged.

**4. Conspiracy § 5—**

Where the indictment charges conspiracy to rob named persons of rings, and other valuable property, and the evidence shows an agreement to commit the offense charged together with agreement as to the disposition of the loot, *held* acts and conversations among the conspirators with reference to the disposition of the rings taken pursuant to the robbery is competent against other conspirators even though they did not actually participate in the efforts to dispose of the rings, since the disposition of the property was a part of the proven unlawful design.

**5. Criminal Law § 81c (3)—**

The admission of evidence over objection cannot be held prejudicial when evidence of similar import is admitted without objection.

**6. Criminal Law § 35—**

Error in permitting a witness to testify that statements made to the witness by defendant were to the same effect as the testimony theretofore adduced, is rendered harmless when the witness thereafter testifies in detail as to what the witness had told him.

**7. Criminal Law § 53f—**

A charge to the effect that certain evidence was offered solely as bearing upon the credibility of a witness "if in fact it does corroborate him" will not be held as an expression of opinion that the evidence did cor-

roborate the witness when later in the charge the court specifically instructs the jury that it should be the sole judge of whether the testimony did in fact corroborate the witness.

**8. Criminal Law § 48d—**

The court has the power to withdraw incompetent testimony theretofore admitted when no prejudice results to defendant.

**9. Criminal Law § 48c—**

Where testimony incompetent as to one defendant is admitted without objection and without request that its admission be limited, an exception thereto will not be sustained.

**10. Criminal Law § 53j—**

An instruction that the law regards with suspicion the testimony of accomplices and other interested parties, will not be held for error when the court follows such instruction with a full and accurate instruction as to the credibility of such testimony.

**11. Criminal Law § 81c (3)—**

Where no relative of the appealing defendant testified at the trial, such defendant cannot be prejudiced by the court's instruction as to credibility to be given the testimony of relatives.

**12. Criminal Law. § 53j—**

The court's charge as to the credibility to be given the testimony of an accomplice *is held* without error in this case.

**13. Criminal Law § 81c (2)—**

When the charge is without prejudicial error when considered as a whole, exceptions thereto will not be sustained.

APPEAL by defendant from *Morris, J.,* at January Term, 1950, of WAYNE.

This is a criminal prosecution in which Linwood Earl Summerlin and Woodrow Stroud were tried upon two bills of indictment. The first bill of indictment charges that Woodrow Stroud, R. E. Sherron, Norman Hart, Crawford C. Woods, Claud Chappell and Linwood Earl Summerlin entered into a criminal conspiracy to commit robbery with firearms and to steal and carry away rings, money and other property belonging to the persons named in the bill of indictment. The second bill of indictment charges that Linwood Earl Summerlin, Woodrow Stroud and Robert Sherron committed the crime of aiding, abetting and assisting Crawford C. Woods, Claud Chappell and Norman Hart unlawfully to take from and rob the owners named in the bill of indictment of the sum of $1500.00 in money and five men's rings valued at $2000.00, it being alleged that this was accomplished with firearms.

The defendants, Claud Chappell, R. E. Sherron, Norman Hart and Crawford C. Woods, entered a plea of guilty under the first bill of indictment. And R. E. Sherron also entered a plea of guilty under the second bill of indictment.

Linwood Earl Summerlin and Woodrow Stroud pleaded not guilty to both bills of indictment.

The place where the actual robbery occurred as a result of the alleged conspiracy is known as the "Hole-in-the-Wall," and is located in Wayne County, N. C., near Goldsboro.

The evidence discloses that Chappell lived in Raleigh and had served six years in the Penitentiary for robbery and became acquainted with Hart while in prison. He also served a prison term of two years for larceny. He admitted that he had been charged with robbery three times and had entered a plea of guilty in each case.

Hart lived in Raleigh and worked in a shoe shop. He had been convicted of robbery from the person in Moore County and received a sentence of 15 to 20 years. He became acquainted with Chappell while in prison and had known Sherron since July or August, 1949. He had also been convicted on a whiskey charge and for stealing an automobile.

Woods had lived in Durham all his life and was convicted of a secret assault while he was subject to the juvenile law, and received a sentence of three months and twenty-eight days. He has also been convicted of gambling and other minor offenses. He had known Sherron for five years.

Sherron was living in Durham at the time of the robbery. He knew Woodrow Stroud and had gambled with him in Raleigh. He also knew Hart and knew he had served a term in the penitentiary. He had been convicted of gambling and of manslaughter.

Woodrow Stroud, at the time of his conviction was 29 years of age, and lived in Duplin County, about 26 miles from Goldsboro. He denied knowing any of the other alleged conspirators except Summerlin. It appears from his own evidence that he spent considerable time at Summerlin's place. It also appears that he engaged in gambling.

Summerlin is a native of Wayne County and lived about two miles east of Goldsboro on the Mount Olive highway, where he operated a filling station. He admitted having seen Sherron on one occasion and that he knew the location of the "Hole-in-the-Wall" and had been there when a crap game was going on and that he understood a poker game was operated at this place. He further testified there was some gambling at his place, but that he had not "run a game" in over fifteen months.

The evidence tends to show the defendants conspired to commit three robberies. It was agreed to rob a gambling place in Snow Hill first, then to rob the place known as the "Hole-in-the-Wall," then after the defend-

ant Summerlin had built up a substantial gambling business, at his place of business, he was to notify the other defendants and they were to rob his place.

According to the evidence Hart, Sherron and Chappell were to receive three-fourths of any money taken and of the proceeds from the sale of any jewelry; and, Stroud and Summerlin were to divide the remaining one-fourth between them.

The evidence further tends to show, that on the 9th of November, 1949, pursuant to the previous agreement, and after having received notice from Stroud, Hart and Sherron met Chappell near his home in Raleigh. Sherron had decided not to participate in the actual robbery and had persuaded Woods to take his place by agreeing to give him two-thirds of his (Sherron's) part. The pistols and masks were transferred from Sherron's car to Hart's car. Hart, Woods and Chappell proceeded to Goldsboro where they met Stroud; and, after some negotiations it was decided not to undertake to rob the Snow Hill place because a fish fry or barbecue was going on at that place, but instead they would go to the "Hole-in-the-Wall" and rob the gamblers at that place.

The details of the actual robbery need not be recited here, since the appellant does not challenge the sufficiency of the evidence to support the verdict, but entered numerous exceptions to the admission of evidence and to portions of the charge.

The jury returned a verdict of guilty of conspiracy and of aiding and abetting in the felony of robbery with firearms, as charged, with a recommendation of mercy.

From the judgment imposed, the defendant Summerlin appeals and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*J. Faison Thomson, Paul B. Edmundson, and N. W. Outlaw for defendant Summerlin.*

DENNY, J. The appealing defendant entered sixteen exceptions to the admission of evidence bearing on the plans agreed upon by all the alleged conspirators to rob a gambling place at Snow Hill, and the reason why the plans were changed on the morning of November 9th, when it was agreed to rob the gamblers at the "Hole-in-the-Wall" instead.

It appears from the evidence that Stroud went to Snow Hill on the morning of November 9th, for the purpose of looking over the situation at the place they planned to rob, and when he returned, he advised against undertaking to rob it because a fish fry or barbecue was being held at the place. After receiving this information, they decided to go to the "Hole-

in-the-Wall" and rob the participants in the gambling at that place. The defendant Summerlin was not with Hart, Stroud, Woods and Chappell when the plans were changed, and they decided to rob the gamblers at the "Hole-in-the-Wall" in lieu of taking a chance on robbing the gambling place at Snow Hill while a fish fry or barbecue was in progress.

The appellant contends that this evidence was incompetent, as against him, because he was not present at any time during these conversations and is not charged with any offense in connection with a conspiracy to rob a place at Snow Hill.

We shall consider this evidence under the rule applicable to the admission of evidence where the State is endeavoring to prove a conspiracy.

"A conspiracy is the unlawful concurrence of two or more persons in a wicked scheme—the combination or agreement to do an unlawful thing or to do a lawful thing in an unlawful way or by unlawful means." *S. v. Whiteside,* 204 N.C. 710, 169 S.E. 711; *S. v. Lea,* 203 N.C. 13, 164 S.E. 737; *S. v. Ritter,* 197 N.C. 113, 147 S.E. 733.

It is seldom indeed that the State can show the existence of a conspiracy by direct proof as it did in this case. *S. v. Whiteside, supra.*

It makes no difference whether Summerlin was present or not when the plans were changed. It is disclosed by the evidence that he did participate in the general plan to rob both places. Therefore, it is immaterial which place was robbed first, and all this evidence, to which the defendant objects, is so related to the plans of the alleged conspirators it was admissible. *S. v. Bennett,* 226 N.C. 82, 36 S.E. 2d 708; *S. v. Smith,* 221 N.C. 400, 20 S.E. 2d 360; *S. v. Dale,* 218 N.C. 625, 12 S.E. 2d 556; *S. v. Andrews,* 216 N.C. 574, 6 S.E. 2d 35; *S. v. Herndon,* 211 N.C. 123, 189 S.E. 173; *S. v. Lea, supra.* "When a conspiracy is established, everything said, written, or done by any of the conspirators in execution or furtherance of the common purpose is deemed to have been said, done or written by every one of them, and may be proved against each. It is immaterial when a defendant entered into or became a party to the conspiracy, or how prominent or inconspicuous a part he took in the execution of the unlawful purpose, he is responsible to the fullest extent for everything that is said and done pursuant to the plot." 11 Am. Jur. 571; *S. v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686; *S. v. Biggs,* 224 N.C. 722, 32 S.E. 2d 352; *S. v. Kelly,* 216 N.C. 627, 6 S.E. 2d 533; *S. v. Payne,* 213 N.C. 719, 197 S.E. 573; *S. v. Smoak,* 213 N.C. 79, 195 S.E. 72; *S. v. Batts,* 210 N.C. 659, 188 S.E. 99; *S. v. Stancill,* 178 N.C. 683, 100 S.E. 241. *Stacy, C. J.,* speaking for the Court, said in *S. v. Dail,* 191 N.C. 231, 131 S.E. 573: "It is undoubtedly the general rule of law that evidence of a distinct substantive offense is inadmissible to prove another and independent crime, the two being wholly disconnected and in no way related to each other. *S. v. Adams,* 138 N.C. 688;

*S. v. McCall,* 131 N.C. 798; *S. v. Graham,* 121 N.C. 623; *S. v. Frazier,* 118 N.C. 1257; *S. v. Jeffries,* 117 N.C. 727; *S. v. Shuford,* 69 N.C. 486. But to this, there is the exception as well established as the rule itself, that proof of the commission of other like offenses is competent to show the *quo animo,* intent, design, guilty knowledge or *scienter,* or to make out the *res gestæ,* or to exhibit a chain of circumstantial evidence in respect to the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions. *S. v. Simons,* 178 N.C. 679. Proof of other like offenses is also competent to show the identity of the person charged with the crime. *S. v. Weaver,* 104 N.C. 758."

Exceptions 20, 44, 45 and 46 relate to the acts and conversations among the conspirators with reference to the disposition of the rings taken from the men who were robbed at the "Hole-in-the-Wall." The defendant contends that these acts and declarations occurred not in furtherance of the conspiracy, but after the joint enterprise had ended; and were, therefore, not admissible against any of the alleged conspirators, except those actually participating in the plans or efforts with respect to the sale or disposition of the rings. The defendant further contends he did not participate in any of these conversations or acts in an effort to dispose of the rings. Exception No. 20 is directed to the testimony of Chappell with respect to the disposition of the rings. Exceptions Nos. 44, 45 and 46 are directed to the testimony of Woods relating to the same subject.

Hart was permitted to tell the complete story relating to the unsuccessful efforts of Sherron to dispose of the rings in Baltimore and of Stroud's request to have the rings delivered at Linwood Earl Summerlin's place; and as to a conversation with Sherron to the effect that he could not find Stroud and had left the rings with Summerlin. Most of this evidence was admitted without objection, and all the exceptions taken to the admission of Hart's testimony have been expressly abandoned by the defendant. Likewise, in other parts of Woods' testimony, he was permitted to testify fully about the rings and their efforts to dispose of them; and, the exceptions entered to such testimony have also been abandoned.

In addition to the above testimony, an officer was permitted to testify as to what he had been told about the rings and their delivery to Summerlin and how the defendant Summerlin had become alarmed when he heard Stroud was in jail, and had thrown the rings away; that Summerlin later informed the officer that a colored boy who worked for him had found the rings and they were delivered to the officer. All this testimony was admitted without objection. In addition to this, the defendant went on the stand and corroborated the testimony of the officer with respect

to the rings, how he received them and how he had attempted to get rid of them.

In the light of the facts and circumstances disclosed by the record before us, we do not think the evidence complained of was inadmissible. In the first bill of indictment the defendants were charged with conspiring to steal and carry away rings, money and other valuable property as well as conspiring to commit the felony of robbery with firearms. In the second bill this defendant was charged with aiding, abetting and assisting in the accomplishment of these things. It appears to have been a part of the unlawful design to take these rings, dispose of them and to divide the proceeds upon the basis agreed upon. And when a conspiracy has been sufficiently established or shown, then the acts and declarations of each conspirator done or uttered in furtherance of such unlawful purpose are admissible in evidence against all. *Safie Mfg. Co. v. Arnold,* 228 N.C. 375, 45 S.E. 2d 577; *S. v. Davenport, supra; S. v. Blanton,* 227 N.C. 517, 42 S.E. 2d 663; *S. v. Smith, supra; S. v. Herndon, supra.* Moreover, evidence of similar import was admitted without objection. These exceptions will not be sustained. *S. v. Muse,* 230 N.C. 495, 53 S.E. 2d 529; *S. v. Fentress,* 230 N.C. 248, 52 S.E. 2d 795; *S. v. Anderson,* 228 N.C. 720, 47 S.E. 2d 1; *S. v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824; *S. v. Brown,* 226 N.C. 681, 40 S.E. 2d 34; *S. v. King,* 225 N.C. 236, 34 S.E. 2d 3; *S. v. Matheson,* 225 N.C. 109, 33 S.E. 2d 590; *S. v. Oxendine,* 224 N.C. 825, 32 S.E. 2d 648.

Exception No. 55 is directed to the testimony of Paul C. Garrison, Sheriff of Wayne County. The Sheriff had testified without objection about arresting Hart, Woods and Sherron; and also about his trip to Philadelphia where he arrested Chappell. Chappell, according to the evidence, told the Sheriff he did not want to tell all he knew until he got back. But, the Sheriff testified, "After I got him back, he told me of his participation in the robbery." Q. "What did he tell you? A. "Just what you have heard, practically verbatim." Exception.

The defendant contends the answer was a conclusion on the part of the witness, and violated the general hearsay rule, and invaded the province of the jury, citing *S. v. McLaughlin,* 126 N.C. 1080, 35 S.E. 1037, and Stansbury, N. C. Evidence, Sec. 126.

If the solicitor had pursued his inquiry no further as to what Chappell told him, this exception would be well taken. However, the answer of the witness was not accepted and he was requested by the solicitor to repeat as nearly as he could the conversation between him and Chappell. The Sheriff then testified in detail, without objection, as to what Chappell had told him. The exception will not be upheld.

The defendant's exceptions Nos. 49, 53 and 56 are directed to evidence admitted for the purpose of corroborating the evidence of the witnesses

Wood, Hart and Chappell. As each of the respective witnesses were tendered, the court instructed the jury in substantially the following language: "Gentlemen of the jury, the evidence now about to be elicited from the witness is offered for, and to be received by you, as corroborative evidence, that is evidence bearing upon the credibility of the witness Chappell, if in fact it does corroborate him. You will not consider it as substantive evidence."

The appellant insists this instruction was tantamount to an expression of opinion by the court to the effect that the evidence did corroborate the respective witnesses and took away from the jury the right to say whether or not it did so.

It appears from the record that on the next morning after the above instructions were given, when court convened, the jury was instructed as follows:

"Gentlemen of the jury, yesterday the Sheriff and Deputy Sheriff were offered as witnesses in this case and testified regarding certain conversations they had with the defendants Hart, Chappell and Woods. At that time I instructed you, gentlemen of the jury, that you would consider the evidence of these officers only as corroborative evidence, and not as substantive evidence. For fear there might have been some confusion as the result of my instructions as to how you would consider that evidence, I charge you that corroborative evidence is supplementary to that already given, and tends to strengthen and confirm it, you, the jury, being the sole judges of whether it does or does not strengthen or confirm the testimony already given. As I charged you, gentlemen of the jury, you will consider that evidence as corroborative evidence, and not as substantive evidence. Furthermore, any other evidence, if I have failed to call your attention to it this morning, or any other evidence that was limited by the Court as corroborative, the instruction which I have just given you applies, you being the sole judges as to whether or not it does or does not corroborate, or strengthen, or confirm the testimony already given."

To this instruction the defendant also excepted. We think this instruction was sufficient to remove any doubt from the minds of the jurors as to their duty to pass upon whether or not the evidence offered as corroborative evidence did in fact corroborate, strengthen or confirm the testimony already given. *S. v. Lassiter,* 191 N.C. 210, 131 S.E. 577. These exceptions are overruled.

Exception No. 75 is directed to the withdrawal of certain evidence pertaining to a conversation between Stroud and Sherron subsequent to the robbery in this case. The evidence was admitted on Friday and withdrawn as against Summerlin on the following Monday. According to this evidence, Stroud undertook to get an agreement with Sherron to have him, Woods and Hart testify that he (Stroud) had nothing to do with the

robbery. He offered to pay for Sherron's defense and to help his family. The court; in its discretion, had the right to withdraw this evidence, and the defendant was not prejudiced by its withdrawal. Furthermore, an examination of the record discloses that the evidence complained of was admitted without objection, and the defendant made no request for it to be considered only as against Stroud. The exception will not be upheld. *S. v. Register,* 224 N.C. 854, 29 S.E. 2d 464; *S. v. Johnson,* 218 N.C. 604, 12 S.E. 2d 278; *S. v. Tuttle,* 207 N.C. 649, 178 S.E. 76; *S. v. McKeithan,* 203 N.C. 494, 166 S.E. 336. See, also, Rule 19 (3), Rules of Practice in the Supreme Court, 221 N.C. 558.

The defendant's exception No. 88 is to the following portion of the charge: "The law regards with suspicion the testimony of near relations, parties to the action, or accomplices and other interested parties and those interested in their own behalf."

Standing alone, this instruction is insufficient to meet the requirement of our decisions with respect to the consideration the jury should give the testimony of near relations, interested parties and accomplices. *S. v. McKinnon,* 223 N.C. 160, 25 S.E. 2d 606, and cited cases. However, the court followed this instruction with a charge in substantial compliance with our decisions as to defendants and accomplices. *S. v. Davis,* 209 N.C. 242, 183 S.E. 420; *S. v. Holland,* 216 N.C. 610, 6 S.E. 2d 217; *S. v. Parsons,* 231 N.C. 599, 58 S.E. 2d 114. Moreover, no relative, either by blood or marriage, testified in behalf of Summerlin, the appealing defendant. Therefore, he could in no way have been prejudiced by the instruction.

Exceptions Nos. 89, 90, 91 and 92 are directed to the charge with respect to the instructions bearing on unsupported evidence of accomplices. Ordinarily, a defendant may be convicted upon the unsupported testimony of an accomplice, and the court is not required to charge on the rule of scrutiny, as to such evidence, in the absence of a request to do so. Even so, when the trial judge undertakes to state the rule, he must conform substantially to the decisions with respect thereto. The court below did so instruct the jury in this case. These exceptions present no prejudicial error. *S. v. Hale,* 231 N.C. 412, 57 S.E. 2d 322; *S. v. Reddick,* 222 N.C. 520, 23 S.E. 2d 909; *S. v. Herring,* 201 N.C. 543, 160 S.E. 891; *S. v. Casey,* 201 N.C. 185, 159 S.E. 337; *S. v. Ashburn,* 187 N.C. 717, 122 S.E. 833; *S. v. Register,* 133 N.C. 746, 46 S.E. 21.

We have carefully considered the other exceptions to the charge of the court, and when it is considered as a whole, as it must be, we find no prejudicial error therein. *S. v. Oxendine, supra; S. v. Utley,* 223 N.C. 39, 25 S.E. 2d 195; *S. v. Hairston,* 222 N.C. 455, 23 S.E. 2d 885.

The remaining assignments of error have been expressly abandoned or do not show sufficient prejudicial error to warrant a disturbance of the verdict below.

In the trial below we find

No error.