60 S.E.2d 322 (1950)
232 N.C. 333
STATE
v.
SUMMERLIN.
No. 219.
Supreme Court of North Carolina.
July 7, 1950.
*324 Attorney General Harry McMullan and Assistant Attorney General Ralph Moody for the State.
J. Faison Thomson, Paul B. Edmundson and N. W. Outlaw, all of Goldsboro, for defendant Summerlin.
DENNY, Justice.
The appealing defendant entered 16 exceptions to the admission of evidence bearing on the plans agreed upon by all the alleged conspirators to rob a gambling place at Snow Hill, and the reason why the plans were changed on the morning of November 9th, when it was agreed to rob the gamblers at the "Hole-in-the-Wall" instead.
It appears from the evidence that Stroud went to Snow Hill on the morning of November 9th, for the purpose of looking over the situation at the place they planned to rob, and when he returned, he advised against undertaking to rob it because a fish fry or barbecue was being held at the place.
*325 After receiving this information, they decided to go to the "Hole-in-the-Wall" and rob the participants in the gambling at that place. The defendant Summerlin was not with Hart, Stroud, Woods and Chappell when the plans were changed, and they decided to rob the gamblers at the "Hole-in-the-Wall" in lieu of taking a chance on robbing the gambling place at Snow Hill while a fish fry or barbecue was in progress.
The appellant contends that this evidence was incompetent, as against him, because he was not present at any time during these conversations and is not charged with any offense in connection with a conspiracy to rob a place at Snow Hill.
We shall consider this evidence under the rule applicable to the admission of evidence where the State is endeavoring to prove a conspiracy.
"A `conspiracy' is the unlawful concurrence of two or more persons in a wicked schemethe combination or agreement to do an unlawful thing or to do a lawful thing in an unlawful way or by unlawful means." State v. Whiteside, 204 N.C. 710, 169 S.E. 711, 712; State v. Lea, 203 N.C. 13, 164 S.E. 737; State v. Ritter, 197 N.C. 113, 147 S.E. 733.
It is seldom indeed that the State can show the existence of a conspiracy by direct proof as it did in this case. State v. Whitesides, supra.
It makes no difference whether Summerlin was present or not when the plans were changed. It is disclosed by the evidence that he did participate in the general plan to rob both places. Therefore, it is immaterial which place was robbed first, and all this evidence, to which the defendant objects, is so related to the plans of the alleged conspirators it was admissible. State v. Bennett, 226 N.C. 82, 36 S.E.2d 708; State v. Smith, 221 N.C. 400, 20 S.E.2d 360; State v. Dale, 218 N.C. 625, 12 S.E.2d 556; State v. Andrews, 216 N.C. 574, 6 S.E.2d 35; State v. Herndon, 211 N.C. 123, 189 S.E. 173; State v. Lea, supra. "When a conspiracy is established, everything said, written, or done by any of the conspirators in execution or furtherance of the common purpose is deemed to have been said, done or written by every one of them, and may be proved against each. It is immaterial when a defendant entered into or became a party to the conspiracy, or how prominent or inconspicuous a part he took in the execution of the unlawful purpose, he is responsible to the fullest extent for everything that is said and one pursuant to the plot." 11 Am.Jur. 571; State v. Davenport, 227 N.C. 475, 42 S.E.2d 686; State v. Biggs, 224 N.C. 722, 32 S.E.2d 352; State v. Kelly, 216 N.C. 627, 6 S.E.2d 533; State v. Payne, 213 N.C. 719, 197 S.E. 573; State v. Smoak, 213 N.C. 79, 195 S.E. 72; State v. Batts, 210 N.C. 659, 188 S.E. 99; State v. Stancill, 178 N.C. 683, 100 S.E. 241. Stacy, C. J., speaking for the Court, said in State v. Dail, 191 N.C. 231, 131 S.E. 573: "It is undoubtedly the general rule of law that evidence of a distinct substantive offense is inadmissible to prove another and independent crime, the two being wholly disconnected and in no way related to each other. State v. Adams, 138 N.C. 688, 50 S.E. 765; State v. McCall, 131 N.C. 798, 42 S.E. 894; State v. Graham, 121 N.C. 623, 28 S.E. 409; State v. Frazier, 118 N.C. 1257, 24 S.E. 520; State v. Jeffries, 117 N.C. 727, 23 S.E. 163; State v. Shuford, 69 N.C. 486. But to this, there is the exception, as well established as the rule itself, that proof of the commission of other like offenses is competent to show the quo animo, intent, design, guilty knowledge or scienter, or to make out the res gestae, or to exhibit a chain of circumstantial evidence in respect to the matter on trial, when such crimes are so connected with the offense charged as to throw light upon one or more of these questions. State v. Simons, 178 N.C. 679, 100 S.E. 239. Proof of other like offenses is also competent to show the identity of the person charged with the crime. State v. Weaver, 104 N.C. 758, 10 S.E. 486."
Exceptions 20, 44, 45 and 46 relate to the acts and conversations among the conspirators with reference to the disposition of the rings taken from the men who were robbed at the "Hole-in-the-Wall". The defendant contends that these acts and declarations occurred not in furtherance of the conspiracy, but after the joint enterprise had ended; and, were therefore, not admissible *326 against any of the alleged conspirators, except those actually participating in the plans or efforts with respect to the sale or disposition of the rings. The defendant further contends he did not participate in any of these conversations or acts in an effort to dispose of the rings. Exception No. 20 is directed to the testimony of Chappell with respect to the disposition of the rings. Exceptions Nos. 44, 45 and 46 are directed to the testimony of Woods relating to the same subject.
Hart was permitted to tell the complete story relating to the unsuccessful efforts of Sherron to dispose of the rings in Baltimore and of Stroud's request to have the rings delivered at Linwood Earle Summerlin's place; and as to a conversation with Sherron to the effect that he could not find Stroud and had left the rings with Summerlin. Most of this evidence was admitted without objection, and all the exceptions taken to the admission of Hart's testimony have been expressly abandoned by the defendant. Likewise, in other parts of Woods' testimony, he was permitted to testify fully about the rings and their efforts to dispose of them; and, the exceptions entered to such testimony have also been abandoned.
In addition to the above testimony, an officer was permitted to testify as to what he had been told about the rings and their delivery to Summerlin and how the defendant Summerlin had become alarmed when he heard Stroud was in jail, and had thrown the rings away; that Summerlin later informed the officer that a colored boy who worked for him had found the rings and they were delivered to the officer. All this testimony was admitted without objection. In addition to this, the defendant went on the stand and corroborated the testimony of the officer with respect to the rings, how he received them and how he had attempted to get rid of them.
In the light of the facts and circumstances disclosed by the record before us, we do not think the evidence complained of was inadmissible. In the first bill of indictment the defendants were charged with conspiring to steal and carry away rings, money and other valuable property as well as conspiring to commit the felony of robbery with firearms. In the second bill this defendant was charged with aiding, abetting and assisting in the accomplishment of these things. It appears to have been a part of the unlawful design to take these rings, dispose of them and to divide the proceeds upon the basis agreed upon. And when a conspiracy has been sufficiently established or shown, then the acts and declarations of each conspirator done or uttered in furtherance of such unlawful purpose are admissible in evidence against all. Safie Mfg. Co. v. Arnold, 228 N.C. 375, 45 S.E.2d 577; State v. Davenport, supra; State v. Blanton, 227 N.C. 517, 42 S.E.2d 663; State v. Smith, supra; State v. Herndon, supra. Moreover, evidence of similar import was admitted without objection. These exceptions will not be sustained. State v. Muse, 230 N.C. 495, 53 S.E.2d 529; State v. Fentress, 230 N.C. 248, 52 S.E.2d 795; State v. Anderson, 228 N.C. 720, 47 S.E.2d 1; State v. Gardner, 228 N.C. 567, 46 S.E.2d 824; State v. Brown, 226 N.C. 681, 40 S.E.2d 34: State v. King, 225 N.C. 236, 34 S.E.2d 3: State v. Matheson, 225 N.C. 109, 33 S.E.2d 590; State v. Oxendine, 224 N.C. 825, 32 S.E.2d 648.
Exception No. 55 is directed to the testimony of Paul C. Garrison, Sheriff of Wayne County. The Sheriff had testified without objection about arresting Hart, Woods and Sherron; and also about his trip to Philadelphia where he arrested Chappell. Chappell, according to the evidence, told the Sheriff he did not want to tell all he knew until he got back. But, the Sheriff testified, "After I got him back, he told me of his participation in the robbery." "Q. What did he tell you? A. Just what you have heard, practically verbatim." Exception.
The defendant contends the answer was a conclusion on the part of the witness, and violated the general hearsay rule, and invaded the province of the jury, citing State v. McLaughlin, 126 N.C. 1080, 35 S.E. 1037, and Stansbury, N.C. Evidence, Sec. 126.
If the solicitor had pursued his inquiry no further as to what Chappell told him, this exception would be well taken.
*327 However, the answer of the witness was not accepted and he was requested by the solicitor to repeat as nearly as he could the conversation between him and Chappell. The Sheriff then testified in detail, without objection, as to what Chappell had told him. The exception will not be upheld.
The defendant's exceptions Nos. 49, 53 and 56 are directed to evidence admitted for the purpose of corroborating the evidence of the witnesses Wood, Hart and Chappell. As each of the respective witnesses were tendered, the court instructed the jury in substantially the following language: "Gentlemen of the jury, the evidence now about to be elicited from the witness is offered for, and to be received by you, as corroborative evidence, that is evidence bearing upon the credibility of the witness Chappell, if in fact it does corroborate him. You will not consider it as substantive evidence."
The appellant insists this instruction was tantamount to an expression of opinion by the court to the effect that the evidence did corroborate the respective witnesses and took away from the jury the right to say whether or not it did so.
It appears from the record that on the next morning after the above instructions were given, when court convened, the jury was instructed as follows: "Gentlemen of the jury, yesterday the Sheriff and Deputy Sheriff were offered as witnesses in this case and testified regarding certain conversations they had with the defendants Hart, Chappell and Woods. At that time I instructed you, gentlemen of the jury, that you would consider the evidence of these officers only as corroborative evidence, and not as substantive evidence. For fear there might have been some confusion as the result of my instructions as to how you would consider that evidence, I charge you that corroborative evidence is supplementary to that already given, and tends to strengthen and confirm it, you, the jury, being the sole judges of whether it does or does not strengthen or confirm the testimony already given. As I charged you, gentlemen of the jury, you will consider that evidence as corroborative evidence, and not as substantive evidence. Furthermore, any other evidence, if I have failed to call your attention to it this morning, or any other evidence that was limited by the Court as corroborative, the instruction which I have just given you applies, you being the sole judges as to whether or not it does or does not corroborate, or strengthen, or confirm the testimony already given."
To this instruction the defendant also excepted. We think this instruction was sufficient to remove any doubt from the minds of the jurors as to their duty to pass upon whether or not the evidence offered as corroborative evidence did in fact corroborate, strengthen or confirm the testimony already given. State v. Lassiter, 191 N.C. 210, 131 S.E. 577. These exceptions are overruled.
Exception No. 75 is directed to the withdrawal of certain evidence pertaining to a conversation between Stroud and Sherron subsequent to the robbery in this case. The evidence was admitted on Friday and withdrawn as against Summerlin on the following Monday. According to this' evidence, Stroud undertook to get an agreement with Sherron to have him, Woods and Hart testify that he (Stroud) had nothing to do with the robbery. He offered to pay for Sherron's defense and to help his family. The court, in its discretion, had the right to withdraw this evidence, and the defendant was not prejudiced by its withdrawal. Furthermore, an examination of the record discloses that the evidence complained of was admitted without objection, and the defendant made no request for it to be considered only as against Stroud. The exception will not be upheld. State v. Register, 224 N.C. 854, 29 S.E.2d 464; State v. Johnson, 218 N.C. 604, 12 S.E.2d 278; State v. Tuttle, 207 N.C. 649, 178 S.E. 76; State v. McKeithan, 203 N.C. 494, 166 S.E. 336. See, also, Rule 19(3) Rules of Practice in the Supreme Court, 221 N.C. 558.
The defendant's exception No. 88 is to the following portion of the charge: "The law regards with suspicion the testimony of near relations, parties to the action, or accomplices and other interested parties and those interested in their own behalf."
*328 Standing alone, this instruction is insufficient to meet the requirement of our decisions with respect to the consideration the jury should give the testimony of near relations, interested parties and accomplices. State v. McKinnon, 223 N.C. 160, 25 S.E.2d 606, and cited cases. However, the court followed this instruction with a charge in substantial compliance with our decisions as to defendants and accomplices. State v. Davis, 209 N.C. 242, 183 S.E. 420; State v. Holland, 216 N.C. 610, 6 S.E.2d 217; State v. Parsons, 231 N.C. 599, 58 S.E.2d 114. Moreover, no relative, either by blood or marriage, testified in behalf of Summerlin, the appealing defendant. Therefore, he could in no way have been prejudiced by the instruction.
Exceptions Nos. 89, 90, 91 and 92 are directed to the charge with respect to the instructions bearing on unsupported evidence of accomplices. Ordinarily, a defendant may be convicted upon the unsupported testimony of an accomplice, and the court is not required to charge on the rule of scrutiny, as to such evidence, in the absence of a request to do so. Even so, when the trial judge undertakes, to state the rule, he must conform substantially to the decisions with respect thereto. The court below did so instruct the jury in this case. These exceptions present no prejudicial error. State v. Hale, 231 N.C. 412, 57 S.E.2d 322; State v. Reddick, 222 N.C. 520, 23 S.E.2d 909; State v. Herring, 201 N.C. 543, 160 S.E. 891; State v. Casey, 201 N.C. 185, 159 S.E. 337; State v. Ashburn, 187 N.C. 717, 122 S.E. 833; State v. Register, 133 N.C. 746, 46 S.E. 21.
We have carefully considered the other exceptions to the charge of the court, and when it is considered as a whole, as it must be, we find no prejudicial error therein. State v. Oxendine, supra; State v. Utley, 223 N.C. 39, 25 S.E.2d 195; State v. Hairston, 222 N.C. 455, 23 S.E.2d 885.
The remaining assignments of error have been expressly abandoned or do not show sufficient prejudicial error to warrant a disturbance of the verdict below.
In the trial below we find.
No error.