STATE OF NORTH CAROLINA v. WALLACE HUNTER LOGNER, RAY WILEY CUMMINGS, AND TOMMY WAYNE WILLIAMS

No. 24

(Filed 12 July 1979)

1. Criminal Law § 169.3— objection to testimony—subsequent admission of similar evidence without objection

Defendant was not prejudiced by a witness's testimony that he gave defendant twenty-five per cent of the valium he bought where the witness had already testified without objection that he had given defendant part of the valium.

2. Criminal Law § 34.2— testimony by coconspirator—obtaining of cocaine from defendant—other crime—evidence as harmless error

In this prosecution for murder, kidnapping, conspiracy to commit armed robbery, and armed robbery, the admission of testimony by a coconspirator that he had on one occasion obtained cocaine from one defendant, if erroneous, could not have prejudiced defendants to the extent that it caused a result different from that which would have been reached had the testimony been excluded.

3. Criminal Law §§ 87.4, 173— irrelevant testimony on redirect—opening door—harmless error

In this prosecution for a robbery-murder in Wake County in which the State's witness, a coconspirator in the crimes charged, testified on cross-examination that he and another unnamed person had committed a robbery-murder in Johnston County about three weeks before the crimes in question, defendants were not prejudiced by the court's admission of irrelevant testimony on redirect that the other participant in the Johnston County robbery-murder was not one of certain named persons, that the other participant was not from Lee, Chatham or Johnston Counties, and that the other participant was armed with a .22 caliber rifle, since such testimony did not in any way implicate defendants in the Johnston County robbery-murder, the testimony was of no probative value for any purpose, and defendants opened the door for such irrelevant testimony by bringing out substantially the same testimony themselves.

4. **Criminal Law § 89.2— telephone company records—admission for corroboration**

In this prosecution for a robbery-murder, telephone company records showing that numerous telephone calls had been made between the residence of a coconspirator who testified for the State and the residence of one defendant during a short period of time prior to the robbery-murder were properly admitted for the purpose of corroborating testimony by the coconspirator.

5. **Criminal Law § 112.1— instructions on reasonable doubt**

The trial court's instructions on reasonable doubt were sufficient where the court charged that a reasonable doubt is a doubt based on reason or common sense arising out of some or all of the evidence presented or lack of evidence, and that proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces the jury of defendant's guilt.

6. **Criminal Law § 117.4— credibility of State's witness—instructions—crimes committed—addiction to valium—grant of immunity**

The trial court in its charge on credibility adequately summarized testimony by the State's witness that he had committed numerous crimes for which he had not been charged or convicted and that he was addicted to valium and sometimes obtained it by deception. Furthermore, the court sufficiently informed the jury that the witness was testifying pursuant to a grant of immunity from the State.

7. **Criminal Law § 116.1— instruction on right of defendants not to testify**

The trial court's instruction on the right of defendants not to testify was correct, adequate and in substantial conformity with defendants' request.

8. **Criminal Law § 114.2— instructions—no expression of opinion that conspiracy proved**

The trial court did not express an opinion that a conspiracy had been proved by his statement in the charge, "Now we are involved at this issue ladies and gentlemen of the jury, with a conspiracy," where the court was explaining to the jury the written issues that would be submitted to them.

9. **Criminal Law § 114.2— instructions—no expression of opinion that State's witness present at robbery-murder**

The trial court did not express an opinion that it had been proved that the State's witness Oldham was present at the robbery-murder in question by his statement in the charge, "and also Oldham of course was there," where the court was correctly requiring the jury to find that the witness Oldham was also present in order to convict defendants of first degree murder.

10. **Criminal Law § 114.2— instructions—no expression of opinion that robbery proved**

In this prosecution for a robbery-murder, the trial court did not express an opinion that the fact of a robbery had been proved by his statement that "the court may have erroneously in this charge referred to the date of this robbery 7 February" where the court was correcting his erroneous reference

to the date of the alleged robbery in his instructions on the elements of armed robbery.

**11. Robbery § 5.2— armed robbery—property stolen—increased burden on State—no prejudice to defendants**

Defendants were not prejudiced by the court's instruction requiring the jury to find that defendants took and carried away money and the victim's pistol in order to find them guilty of armed robbery when the indictment charged only the stealing of money, since the State was thus required to prove more than should have been required of it.

APPEALS by the three defendants from *Friday, Judge.* Judgments entered 23 July 1978 in Superior Court, WAKE County.

Defendants were tried upon separate bills of indictment, proper in form, charging each defendant with: (1) first degree murder; (2) kidnapping; (3) conspiracy to commit armed robbery; and (4) armed robbery. All charges against each defendant were consolidated for trial.

One David Oldham, a fourth participant in the robbery-murder-kidnapping, testified for the State under a grant of immunity.

Each defendant was convicted of first degree murder upon which a sentence of life imprisonment was imposed. Each was convicted of kidnapping and, upon a finding of mitigating circumstances, a prison sentence of twenty to twenty-five years was imposed. Each was convicted of conspiracy to commit armed robbery upon which a prison sentence of ten years was imposed. Each was convicted of armed robbery. In the case of each defendant the trial judge ruled that the armed robbery conviction merged with the first degree murder conviction. On 21 December 1978 we allowed defendants' motions to review the convictions of conspiracy to commit armed robbery and the convictions of kidnapping prior to determination by the Court of Appeals.

The State's evidence tended to show the following:

Robert Waylon Holland, the victim of the murder-robbery, lived in the New Hill community in western Wake County. Mr. Holland's business was located next to his residence. He operated a business of selling beer and snacks. Also, two pool tables were located on his business premises. He did business in cash and

because there were no banks nearby he cashed checks for customers. On the day in question, 7 March 1977, Mr. Holland carried a large sum of money to the store—in the thousands of dollars.

About three weeks before 7 March 1977 State's witness Oldham and defendant Cummings went to the New Hill community where they were to meet a person named Tink for the purpose of robbing Mr. Holland. Tink did not arrive and the robbery was not consummated. Later, State's witness Oldham and defendant Cummings again went to the New Hill community to find out if Mr. Holland lived behind the pool hall and to see what the place looked like inside.

Approximately ten days before 7 March 1977 State's witness Oldham met with defendant Cummings, with defendant Wallace (Skeeter) Logner, and with Sneezy Logner (Wallace Logner's brother) at Wallace (Skeeter) Logner's house in Durham. The four of them went to New Hill to observe Mr. Holland's actions. Defendant Cummings and defendant Wallace (Skeeter) Logner were let out of the car across the road from the pool room. State's witness Oldham and Sneezy Logner drove about one-half mile down the road to a pull-off. They waited in the car for a call on the C.B. radio. The call was to be made from a walkie-talkie C.B. radio that defendant Cummings had with him. After about thirty minutes they received the call and proceeded back to New Hill where they picked up defendant Cummings and defendant Wallace (Skeeter) Logner. Cummings related to them how Mr. Holland had closed the pool room and had walked to the house next door.

Approximately two days later (about eight days before 7 March 1977) the four of them (Oldham, Cummings, Wallace Skeeter Logner, and Sneezy Logner) again drove to New Hill. On that trip they found the pool room closed and they returned to Durham.

Approximately five days before 7 March 1977 the four of them (State's witness Oldham, Sneezy Logner, defendant Cummings, and defendant Wallace (Skeeter) Logner) again drove to New Hill in the late afternoon. On the way to New Hill they discussed how they could watch Mr. Holland to determine how and when he went from the store to his house and the best way

State v. Logner

to rob him. Sneezy Logner let State's witness Oldham and defendants Cummings and Wallace Logner out of the car near the Holland residence. Sneezy drove the car back to the pull-off to await a radio call from the other three. Oldham, Cummings, and Skeeter Logner carried a crowbar, sledge hammer, chisel, and two large screwdrivers in the event they might need to open a safe. Each wore gloves and a ski mask and each was armed with a pistol. They walked down the railroad track to the back of the Holland residence but were frightened away when Mr. Holland unexpectedly walked around the house. Upon receiving the call on the radio Sneezy Logner drove back near New Hill where he picked up Oldham, Cummings, and Wallace Logner. On their drive back to Durham they decided that the best time to enter the Holland house was as the train passed through New Hill.

On 7 March 1977 Sneezy Logner was not available as a driver; therefore, defendant Williams was enlisted to drive. Williams was instructed how to operate the radio, where to let them off, and how to pick them up. Again, State's witness Oldham, defendant Cummings, and defendant Wallace (Skeeter) Logner walked down the railroad tracks to the rear of the Holland residence. They again carried the burglary tools, each was wearing gloves and ski masks, and each was armed. Oldham had a .38 cal. revolver, Cummings had 9 millimeter automatic pistol, and Wallace (Skeeter) Logner had a sawed-off double barrel shotgun.

As the train passed through New Hill, the three of them entered the back door of the Holland residence. They taped Mrs. Holland's hands, eyes, and mouth. They then waited for Mr. Holland to come from the store. As Mr. Holland entered the back door, Wallace (Skeeter) Logner shot him with the shotgun. They then took a pistol, a wallet and a cloth bag from Mr. Holland's pockets. They left by the back door and called defendant Williams on the radio, who then picked them up and drove back to Durham. Each of the four received a share of the money taken from Mr. Holland. State's witness Oldham received a share of approximately $275.00.

The defendants offered no evidence.

*Attorney General Edmisten, by Assistant Attorney General Thomas B. Wood, for the State.*

*Arthur Vann for defendant Wallace (Skeeter) Logner.*

*William B. Crumpler for defendant Ray Wiley Cummings.*

*Howard F. Twiggs for defendant Tommy Wayne Williams.*

BROCK, Justice.

During cross-examination by defendants of State's witness Oldham each defendant brought out that Oldham was addicted to valium. Defendant Cummings also brought out on cross-examination that Oldham had tried other drugs, including cocaine. Then on re-direct examination the State was permitted to bring out that Oldham gave defendant Cummings about twenty-five per cent of the valium he bought. Also on re-direct examination Oldham was permitted to testify that, after the first trip to New Hill to view the Holland's store and residence, he took cocaine which he obtained from Wallace (Skeeter) Logner.

[1] Defendant Cummings undertakes to assign error to the admission of testimony on re-direct examination of the State's witness Oldham concerning valium supplied by Oldham to Cummings. Defendants Logner and Williams do not object to the re-direct testimony concerning valium. Defendant Cummings waived objection to testimony about the valium by failure to enter timely objection or motion to strike. *State v. Little*, 278 N.C. 484, 180 S.E. 2d 17 (1971); *Stansbury's N.C. Evidence*, § 27, p. 70 (Brandis Rev. 1973). The following transpired on re-direct examination of State's witness Oldham:

"REDIRECT EXAMINATION BY Mr. Hall [District Attorney]:

When Mr. Oldham engaged in criminal activity, he usually had more than one other person with him. Of the $100,000.00 of property he admitted to stealing, his share approximated $25,000.00. He did not take all the valium he got prescriptions for.

Q. Who else took any of it?

A. I gave Ray Cummings part of it. I gave Chester Estes part of it.

Q. What percentage of it would you say that you gave Ray Cummings?

MR. CRUMPLER: Objection.

COURT: OVERRULED.

CUMMINGS' EXCEPTION NO. 1.

A. I would say approximately twenty-five percent of what I bought."

Having failed to object to the first question about who else took any of the valium, and particularly having failed to move to strike the testimony that Oldham gave Cummings part of it, defendant Cummings' objection to the question as to the percentage given to Cummings came too late. We perceive no harm in the witness answering that he gave Cummings twenty-five per cent of the valium he bought after he had already testified without objection that he had given Cummings part of the valium. This assignment of error by defendant Cummings is overruled.

[2] Defendants Logner and Williams assign as error the admission of the testimony concerning cocaine on re-direct examination. Defendant Cummings does not object to the re-direct testimony concerning cocaine.

"When a conspiracy is established, everything said, written, or done by any of the conspirators in execution or furtherance of the common purpose is deemed to have been said, done or written by every one of them, and may be proved against each." *State v. Summerlin,* 232 N.C. 333, 337, 60 S.E. 2d 322, 325 (1950). "It is undoubtedly the general rule of law that evidence of a distinct substantive offense is inadmissible to prove another and independent crime, the two being wholly disconnected and in no way related to each other." *Id.* However, if the evidence tends to prove any other relevant fact it will not be excluded merely because it also shows the accused to have committed an independent crime. 1 *Stansbury's, supra,* § 91, p. 288. If the evidence of other crimes bears some logical relevance to the crime charged it will be admitted. *See State v. Fowler,* 230 N.C. 470, 53 S.E. 2d 853 (1949).

The testimony concerning cocaine was restricted by the trial judge to events which took place after the planning of the robbery began. The trial judge ruled in effect that the evidence was relevant as a part of the on-going conspiracy. It may also have been relevant to establish the close relationship between State's witness Oldham and Wallace (Skeeter) Logner to support Oldham's identification of Logner as a participant in the crime for which he was being tried.

Defendant Williams argues that even though the evidence that State's witness Oldham obtained the cocaine from defendant Logner may have been admissible against defendants Logner and Cummings, it was nevertheless inadmissible against him because the evidence of the conspiracy did not implicate him until the day of the robbery when he was secured as a substitute driver.

It is immaterial when a defendant entered into or became a party to the conspiracy, or how prominent or inconspicuous a part he took in the execution of the unlawful purpose; he is responsible to the fullest extent for everything that is said and done in furtherance of the plot. *State v. Summerlin, supra.*

Conceding arguendo that it was error to admit the re-direct testimony that Oldham on one occasion had obtained cocaine from defendant Logner, we fail to perceive how the testimony reasonably could have prejudiced Logner and Williams in this trial for murder, kidnapping, conspiracy to commit armed robbery, and armed robbery to the extent that it caused a result different from that which would have been reached had the testimony been excluded. The primary controversy throughout this trial was the credibility of State's witness Oldham and defendants were afforded every opportunity to discredit him. It seems to us that the mere mention of cocaine one time was insignificant in a trial as protracted as this one. In our opinion the error in admitting the one brief statement that Oldham had obtained cocaine from defendant Logner could not have prejudiced defendants Logner and Williams so as to raise a "reasonable possibility that, had the error in question not been committed, a different result would have been reached. . . ." G.S. § 15A-1443. *See State v. Cross*, 284 N.C. 174, 200 S.E. 2d 27 (1973).

This assignment of error by defendants Logner and Williams to the admission of the testimony concerning cocaine on re-direct examination is overruled.

[3]   All defendants assign as error that the trial judge allowed "the prosecutor to conduct redirect examination of the witness Oldham with respect to a separate robbery-homicide that the witness admitted participating in with another unnamed person."

On cross-examination by defendants the State's witness Oldham testified that he was presently serving a twenty year sentence for safecracking; that he had broken into at least one hundred homes and businesses; that he was fifteen or sixteen years of age when he was first arrested; that between the ages of sixteen and thirty-three he had netted at least $100,000.00 from stealing and robbing; and that he participated with another person in the robbery and murder of Mr. and Mrs. A. B. Lee in Johnston County about three weeks before the robbery-murder involved in this case. The cross-examination of the State's witness Oldham concerning his past conduct was permissible and proper for the purpose of impeaching his credibility as a witness. However, defense counsel also launched into completely irrelevant cross-examination concerning the names of persons who had participated in criminal activity with Oldham. Oldham was permitted to testify on cross-examination, without objection from anyone, that Bobby Blackman and Jimmy Blackman had participated with him in criminal activity; that Bobby Blackman is presently serving a prison sentence for a homicide; that Richard Godwin had participated in four crimes with him; that Charles Estes has robbed as many as twenty-five places with him; that his brothers Anthony and Keith Oldham were involved with him in some robberies in Chatham County; and that he and Roscoe Grice discussed the robbery and murder of Mr. and Mrs. Lee in Johnston County, although Grice did not actually participate.

It appears from the record on appeal that Oldham had, in his conversations with an S.B.I. agent, implicated defendant Cummings in the murder-robbery of Mr. and Mrs. Lee in Johnston County. In response to defendant Cummings' motion to suppress such testimony by State's witness Oldham, the district attorney properly instructed Oldham not to mention Cummings' participation in the Johnston County murder-robbery. This instruction was followed by Oldham. Therefore defendants were safe in launching into the irrelevant cross-examination concerning others who had participated in crime with him. But that safety for Cummings did not render the irrelevant cross-examination proper. Such cross-

examination was apparently engaged in to lay the ground for the spurious argument to the jury by defendants that since those other persons had engaged in crimes with Oldham that the jury more reasonably should believe that it was one or more of those persons who had participated with Oldham in the Johnston County robbery-murder and also in the robbery-murder of Mr. Holland in Wake County instead of the three defendants.

On re-direct examination by the district attorney Oldham testified that he and one other person were present at the robbery-murder of Mr. and Mrs. Lee in Johnston County. The district attorney then asked a series of questions, and, over objection by defendants to each question, Oldham was permitted to testify that it was not Chester Estes, that it was not Anthony or Keith Oldham, that it was not Bobby Blackman, and that it was not Jimmy Blackman who was present with him at the time of the Johnston County robbery-murder. These questions and answers, like defendants' cross-examination, were irrelevant to the subject matter of the trial. However, defendants by their cross-examination clearly opened the door to the questions on re-direct examination and should not be heard to complain. G.S. § 15A-1443(c). In any event none of the questions or answers, of which defendants complain, in any way implicated defendants in the independent substantive offenses of the robbery and murder of Mr. and Mrs. Lee in Johnston County.

Following the above line of questioning the district attorney, with further irrelevant questions, brought out that the other person with Oldham in the Johnston County robbery-murder was not from Lee County. Then all defendants objected to Oldham being allowed to testify that the other person was not from Chatham County and was not from Johnston County. It seems that defendants in their cross-examination of Oldham and the district attorney in his re-direct examination lost sight of the fact that the crime in question was the robbery-murder of Mr. Holland in the New Hill section of Wake County. Defendants and the State undertook an investigation of the Johnston County robbery-murders.

Defendants argue from the false premise that allowing Oldham to testify that the other person with him in the Johnston County robbery-murders was not from Chatham County or from

Johnston County (they did not object to his testimony that the other person was not from Lee County) necessarily reflected that the other person must have been from Durham County (home county of the defendants) and therefore implicated one of them as being the other participant. This argument is specious. Under the testimony of which defendants now complain the other person in the Johnston County robbery-murders could have as easily come from any one of the other one hundred counties of the State or even beyond the borders of the State.

Following the above line of questioning the district attorney, still on re-direct examination of Oldham about the Johnston County robbery-murders, asked if the other person with Oldham was armed and with what. Over objection from all defendants, Oldham was allowed to answer that the other person was armed with a .22 cal. rifle. Conceding that the questions and answers were irrelevant to the charges being tried, it is inconceivable how defendants were harmed. Defendants had already brought out on their irrelevant cross-examination that the other person with Oldham shot Mr. Lee with a . 22 cal. rifle.

The admission of technically incompetent evidence is harmless unless it is made to appear that defendants were prejudiced thereby and that a different result likely would have ensued had the evidence been excluded. *State v. Barbour*, 278 N.C. 449, 180 S.E. 2d 115 (1971). Our judgment must be based on our own reading of the record on appeal and on what seems to us to have been the probable impact of this irrelevant testimony on the minds of an average jury. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed. 2d 284 (1969). Viewing the record on appeal in its entirety this irrelevant testimony brought out by the State was of no probative value for any purpose and could not have prejudiced defendants. Also, as pointed out, defendants opened the door for this irrelevant testimony by bringing out substantially the same irrelevant testimony themselves. This assignment of error is without merit and is overruled.

[4] The defendants assign as error that the trial court permitted the State to offer in evidence telephone company records, which indicated that there had been numerous telephone calls between defendant Cummings and Oldham between 19 February 1977 and 7 March 1977 (the date of the robbery-murder of Mr. Holland in Wake County).

Oldham testified that he had known defendant Logner for two years prior to 7 March 1977; that he had known defendant Cummings three to four years prior to 7 March 1977; that he had known defendant Williams for two to three weeks prior to 7 March 1977; and that he knew where each of the three lived in Durham. Oldham further testified that he had talked to defendant Cummings on the telephone from his (Oldham's) residence in the Bear Creek Community of Chatham County on several occasions, including a call from Cummings on 7 March 1977 in which Cummings told him they needed to go back "down yonder," and told Oldham to bring this shotgun.

The telephone records were identified and duly authenticated by qualified officials of the General Telephone Company of the Southeast (serving Durham) and of United Telephone Company for the Carolinas (serving the Bear Creek Community of Chatham County). These records were for the telephone in the residence in which defendant Cummings lived in Durham and for the telephone in the residence in which Oldham lived in Chatham County. The records corroborated Oldham's testimony and were competent for this purpose. They were properly admitted. 1 *Stansbury's, supra,* § 155, p. 521. This assignment of error is without merit and is overruled.

Under defendants' assignments of error to the instructions given to the jury by the trial judge they made eight arguments:

[5]  1. Defendants argue that the court did not adequately define reasonable doubt. They rely upon *State v. Hammonds*, 241 N.C. 226, 85 S.E. 2d 133 (1954). In *Hammonds* it was held that, absent a request, the trial judge is not required to define reasonable doubt. *Hammonds* also held that the law does not require any set formula in defining reasonable doubt. In *Hammonds* the opinion pointed out that there were many approved formulae. In the present case the trial judge defined reasonable doubt as follows:

"[A] reasonable doubt is a doubt based on reason and on common sense, arising out of some or all of the evidence that has been presented; or lack or insufficiency of the evidence, as the case may be.

Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt."

The foregoing definition comports with the approved examples pointed out in *Hammonds,* and it is an adequate and clear definition of reasonable doubt. This argument is without merit.

[6] 2. Defendants argue that the trial judge "did not adequately explain credibility" in his charge. The defendants filed thirteen numbered requests for jury instructions. They argue that they requested but the trial judge failed, in his summation of the evidence, to mention the numerous crimes Oldham admitted committing but for which he was not charged or convicted, and failed to mention Oldham's admission to valium addiction or that he sometimes obtained valium by deception. Our reading of the charge to the jury discloses that the judge adequately summarized the testimony of Oldham upon these points as follows: "that he had been convicted of breaking and entering, safecracking and indecent exposure and he has participated in other breakings and enterings since he was fifteen years old. He has participated in about 100 breaking and enterings and has entered about fifty safes. He has participated in a robbery, murder of Mr. and Mrs. Lee in Johnston County. . . ." Further as follows: "That he took valium and drank vodka and he secured valium by taking a pill bottle to the drugstore and he secured it from two drugstores. . . . That he was a valium addict for about two years before 1977; that he took up to eight pills daily and drank vodka. . . ." The trial judge is not required to give his instructions in the wording arranged by counsel. It is sufficient if he instructs in substantial conformity with the requested instruction. *State v. Kirby,* 3 N.C. App. 43, 163 S.E. 2d 911 (1968). The instructions upon this request by defendants was in substantial conformity with the request and was adequate. This argument is without merit.

Defendants further argue that the trial judge failed to inform the jury adequately of the grant of immunity to the State's witness Oldham. We disagree. The trial judge instructed as follows: "Ladies and gentlemen of the jury the Court earlier in this trial instructed you that David Oldham, Jr. was testifying under a grant of immunity in this trial. Again, the Court instructs you that if you find that this witness testified in whole or in part for these reasons or this reason, you should examine his testimony with great care and caution in deciding whether or not to believe it." Further in the charge the judge instructed: "He has

been granted immunity from the Holland crimes and others about which he testifies and he has been promised he would serve his time in the county jail for his testimony in this trial. . . ." This argument of defendants is without merit.

From a reading of defendants' argument it appears they object to the failure of the trial judge to argue their case to the jury for them. This the trial judge is not required to do nor may he properly do.

[7]  3. The defendants argue that "the trial court committed prejudicial error in charging the jury on the right of the defendants not to testify." The defendants requested an instruction on their rights not to testify. Again we point out that the trial judge is not required to give his instructions in the wording arranged by counsel. It is sufficient if the trial judge instructs in substantial conformance with the request. The instruction as given was correct, adequate and in substantial conformance with the request. *See State v. Scott*, 289 N.C. 712, 724, 224 S.E. 2d 185, 192 (1976). This argument of defendants is without merit.

4. Defendants argue that the trial judge expressed his opinion, in violation of G.S. 15A-1222 and 1232, that certain facts had been proved. Defendants point to three instances where they contend the trial judge expressed an opinion.

[8]  First: Defendants contend that the trial judge expressed the opinion that a conspiracy had been proved. They extract from the charge these words: "Now we are involved at (sic) this issue ladies and gentlemen of the jury, with a conspiracy." Taken out of the context of what had been said immediately prior to the above extracted sentence and what was said immediately after the above extracted sentence the sentence might be suspect. However, the trial judge at this point was explaining to the jury the written issues that would be submitted to them. He then proceeded to define conspiracy and placed the burden upon the State to prove each element beyond a reasonable doubt. We cannot perceive how the jury could have understood the trial judge to be stating his opinion that a conspiracy had been established.

[9]  Second: Defendants contend that the trial judge expressed an opinion that it had been proved that Oldham (State's witness) was present at the robbery-murder of Mr. Holland. They extract

the following words from the charge: "and also Oldham of course was there. . . ." The phrase extracted by defendants as an expression of opinion by the trial judge, when placed back in context, reads as follows:

> "So, ladies and gentlemen of the jury, in connection with the second issue, Court charges that if you find from the evidence and beyond a reasonable doubt, that the defendants Logner, Cummings and Williams, and also Oldham of course was there, were present on the premises of Mr. Holland's home on this day in question and they were at that time, as a result of a common purpose, to rob Mr. Holland with a firearm; that if one or more of them actually had a shotgun, pistols, a firearm; that they were aiding and abetting each other and that Mr. Holland was killed while the defendants were perpetrating armed robbery and that he died as a proximate result of the bullet wounds to his body received during the perpetration of an armed robbery; then you being so satisfied beyond a reasonable doubt would return a verdict of guilty of first degree murder as charged in the bills of indictment."

It seems obvious that the trial judge was correctly requiring the jury to find that Oldham was present also.

[10]    Third: Defendants contend that the trial judge expressed an opinion that it had been proved that a robbery had been committed. The sentence about which defendants complain appears in the trial judge's explanation to the jury of the elements the State must prove beyond a reasonable doubt to justify convictions of kidnapping. When read in context, the instruction is: "[F]irst, that the defendants, while actually acting with a common purpose and aiding and abetting each other, unlawfully, that is without justification or excuse, restrained Mrs. Holland, that is restricted Mrs. Holland's freedom of movement, by taping her legs, arms and mouth and eyes on 7 March 1977, in her own home in Wake County—*members of the jury, the court may have erroneously in this charge referred to the date of this robbery 7 February.* If so, strike that from your minds and substitute 7 March 1977 in all places. Secondly, that Mrs. Holland did not consent to this restrainment or confinement. . . ." The portion italicized is the portion to which defendants except. Obviously the trial judge was only seeking to eliminate confusion for the jury for he had in fact

referred to "the 7th day of February 1977" in his instructions on the elements of armed robbery. We cannot conceive of the jury being led to think that the trial judge was of the opinion that the fact of a robbery had been proved.

In the three instances challenged by defendants we find no expression of an opinion by the trial judge.

5. Defendants argue that the trial judge did not accurately or properly explain conspiracy. We have carefully read the instruction about which defendants complain. Again, when placed back in context with the instructions immediately proceeding and immediately following the sentence extracted by defendants the instruction is a clear definition of a criminal conspiracy and adequately applies the law to the evidence in the case. This argument is without merit.

[11]  6. Defendants argue that the trial judge incorrectly instructed the jury that they could find the defendants guilty of armed robbery if the property stolen included deceased's pistol. They concede there was evidence that defendants took deceased's pistol but they argue that since the bill of indictment only charged the stealing of money it was improper to include the pistol in the instructions. The fallacy in defendants' argument is that in fact the error in mentioning the pistol, if error it be, was beneficial to defendants because it required the State to prove more than was required under the indictment. The trial judge instructed as follows: ". . . and that they took and carried away this money and a pistol from the person of Mr. Holland, without Mr. Holland's voluntary consent, by endangering or threatening his life, Mr. Holland's life, with the use or threatened use of the firearm, defendants knowing that they were not entitled to take this money and this pistol and intending at that time to deprive Mr. Holland of its use permanently, it would be your duty to return a verdict of guilty of robbery with a firearm." As pointed out above, this coupling of the money and the pistol in the instructions required the State to prove more than should have been required of it. We find no prejudice to defendants.

7. Defendants argue that the trial court did not accurately or properly explain kidnapping.

8. Defendants argue that, as a whole, the trial court's instructions were confusing and too favorable to the State.

It would constitute a laborious and unjustified writing and would seriously expand this already somewhat unnecessarily, voluminous opinion to articulate and answer each of defendants' arguments under these two subheads. Suffice to say we have examined and considered each of defendants' arguments hereunder and find them to be tediously tenacious but without merit. The instructions to the jury fairly and adequately apprised it of its duties and fairly and adequately applied the law to the evidence in the case.

For the reasons heretofore stated we hold that defendants' assignment of error charging that the trial court failed to instruct the jury in accordance with defendants' requests for instructions, and defendant Cummings' assignment of error charging that the trial court should have granted his motion for mistrial and for a severance of his trial from the trials of Logner and Williams, are without merit.

In our opinion defendants received a fair trial free from prejudicial error.

No error.